**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

CPC PATENT TECHNOLOGIES PTY LTD.,

              Plaintiff,

v.

APPLE INC.,

              Defendant.

Case No. 6:21-cv-00165-ADA

**JURY TRIAL DEMANDED**

**DEFENDANT APPLE INC.'S MOTION TO**
**TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................. 1

II.     STATEMENT OF FACTS ............................................................................... 2

        A.      Nature of this Case .............................................................................. 2

        B.      Apple's Relevant Witnesses and Documents are Located in Northern California . 2

        C.      CPC is an Australian Company with No Connections to Texas ............................ 5

        D.      Relevant Third Party Witnesses are Located in Hong Kong .................. 6

III.    LEGAL STANDARD ...................................................................................... 6

IV.     The Northern District of California Is Clearly the More Convenient Venue ................... 7

        A.      The Private Interest Factors Favor Transfer .......................................... 7

                1.      Relative Ease of Access to Sources of Proof ............................ 8

                2.      Availability of Compulsory Process .......................................... 10

                3.      Attendance of Willing Witnesses ............................................. 11

                4.      All Other Practical Problems ................................................... 13

        B.      The Public Interest Factors Favor Transfer ........................................ 13

                1.      Court Congestion .................................................................. 13

                2.      Local Interests ...................................................................... 14

                3.      Familiarity with the Governing Law and Conflicts of Law ..................... 15

V.      CONCLUSION ............................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer America Corp.*,
    626 F.3d 1252 (2010) ........................................................................................................11

*In re Adobe Inc.*,
    No. 2020-126, 2020 WL 4308164 (Fed. Cir. Jul. 28, 2020) ...............................................7, 12

*Aguilar-Ayala v. Ruiz*,
    973 F.2d 411 (5th Cir. 1992) .............................................................................................10

*In re: Apple Inc.*,
    2020 WL 3249953 (Fed. Cir. 2020).............................................................................7, 11, 12

*In re Apple Inc.*,
    979 F.3d 1332 (Fed. Cir. 2020)..................................................................................... *passim*

*Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*,
    No. 6:150cv00091, 2016 WL 6909479 (W.D. Tex. Jan. 28, 2016)....................................7, 11

*Collaborative Agreements, LLC. v. Adobe Sys. Inc.*,
    No. 1:14-cv-356, 2015 WL10818739 (W.D. Tex. Aug. 21, 2015) ......................................8, 9

*CPC Patent Techs. Pty Ltd. v. HMD Global Oy*,
    Civ. No. 6:21-cv-166 ..........................................................................................................13

*In re CPC*,
    Case 5:21-mc-80091-SVK (N.D. Ca., April 22, 2021) (Ex. C).............................................9

*DataQuill, Ltd. v. Apple Inc.*,
    No. 13-cv- 706, 2014 WL 2722201 (W.D. Tex. June 13, 2014) ...........................................15

*Finjan LLC v. Cisco Sys. Inc.*,
    Civ. No. 17-cv-72-BLF, Dkt. 738 (N.D.C.A. Dec. 16, 2020) (setting trial for June 3, 2021).14

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)..............................................................................7, 10, 11, 12

*In re Google Inc.*,
    2017 WL 977038 (Fed. Cir. Feb. 23, 2017).........................................................................11

*In re Hoffman-La Roche, Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009)......................................................................................10, 15

*In re Nintendo Co., Ltd.*,
    589 F.3d 1194 (Fed. Cir. 2009)...............................................................................7

*Parus Holdings Inc. v. LG Elecs. Inc. and LG Elecs. U.S.A. Inc.*,
    No. 6:19-cv-432-ADA, Dkt. 161 (W.D. Tex. Aug. 20, 2020)...................................8

*Peak Completion Techs., Inc. v. I-TEC Well Solutions, LLC*,
    No. A-13cv-086-LY, 2013 WL 12121002 (W.D. Tex. June 26, 2013)......................12

*In re TracFone Wireless, Inc.*,
    Case No. 2021-136, Dkt. 11 (Fed. Cir. Apr. 20, 2021)...........................7, 11, 12, 15

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)...........................................................................6, 15

*Uniloc USA Inc. v. Box, Inc.*,
    No. 1:17-cv-754-LY, 21018 ..................................................................................8, 13

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ...............................................................................7, 11

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ..................................................................1, 6, 7, 11

*Wet Sounds, Inc. v. Audio Formz, LLC*,
    No. 17-cv-141, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017)...................8, 10, 12

*XY, LLC v. Trans Ova Genetics, LC*,
    No. 16-cv-00447, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ..............................8

**Statutes**

28 U.S.C. § 1404(a) ..................................................................................................1, 6

28 U.S.C. § 1782(a) .......................................................................................................9

## I.      INTRODUCTION

This is a patent infringement case with no connection to Texas.  The plaintiff, CPC, is an Australian patent holding company, and the defendant, Apple, is a California corporation.  This case has numerous, direct connections to the Northern District of California but none to Texas, much less Waco.  A straightforward application of the *Volkswagen* factors shows that this case should be transferred to the Northern District of California, where Apple is headquartered and where the majority of its likely witnesses are located.  All of the key factors favor transfer, and *none* favor keeping this case in Waco.

While Apple maintains offices in the Western District of Texas, the groups at Apple that designed and developed the accused functionality are not located in Texas, and Apple is not aware of any employees located there who were involved in the development of the accused functionalities or with any issues implicated in this case.  The accused technology was developed in the Northern District of California, the Czech Republic, and Florida.  Apple's key witnesses all reside in one of these three locations, with the bulk residing in the Northern District of California.  No witnesses are located in Texas.  Nor is Apple aware of any relevant documents or evidence located there.

By any measure, the Northern District of California is a more appropriate venue, and this case should be transferred for the convenience of the parties and in the interest of justice.  For these reasons and those discussed below, Apple respectfully requests that the Court transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## II.    STATEMENT OF FACTS

### A.    Nature of this Case

CPC filed this patent infringement suit against Apple on February 23, 2021.  Compl. at p. 8.  CPC accuses Apple of infringing U.S. Patent Nos. 8,620,039, 9,269,208 and 9,665,705 (the "Asserted Patents").  Compl. ¶ 1.  CPC accuses "Apple iPhone type cellular phones and Apple iPad type tablets, including the Apple iPhone X and any Apple product or device that is substantially or reasonably similar" equipped with Face ID of infringing the '208 and '705 Patents.  Compl. Exs. F, H.  CPC also accuses "Apple iPhone type cellular phones and Apple iPad type tablets, including the Apple iPhone SE (2nd generation) and any Apple product or device that is substantially or reasonably similar" equipped with Touch ID of infringing the '208 and '705 Patents.  Compl. Exs. G, I.  Finally, CPC accuses "Apple iPhones, iPads equipped with Apple Card or device that is substantially or reasonably similar" of accusing the '039 patent.  Compl. Ex. J.

The charts attached to the complaint alleging infringement target aspects of Apple's Touch ID, Face ID, and Apple Wallet functionality.  Compl. Exs. F-J.  The groups that develop the specific technology implicated by these allegations are not located in Texas, but are located in California, the Czech Republic, or Florida.

### B.    Apple's Relevant Witnesses and Documents are Located in Northern California

Apple is a California corporation headquartered in Cupertino, California, which is in the Northern District of California ("NDCA").  Ex. A (Decl. of K. Quisenberry); Ex. B (Decl. of M. Rollins) ¶ 3.  Apple's management, primary research and development, and marketing facilities are located in or near Santa Clara County, California, including cities such as Cupertino and Sunnyvale, all of which are located in NDCA.  *Id*.  As of April, 2021, Apple has more than 35,000 employees who work in or near its Cupertino headquarters.  *Id*.

Apple's accused Touch ID functionality grew out of an acquisition of a company called AuthenTec, which Apple acquired in 2012. *Id.* ¶ 9. Dale Setlak and Michael Boshra are two Apple employees from AuthenTec who have knowledge of the history of the development of biometric security technology in the industry and at Apple, including aspects of the accused functionality at issue in this case. *Id.* ¶¶ 9, 10. Mr. Setlak was a co-founder of AuthenTec. *Id.* ¶ 9. Mr. Setlak's primary workplace is in Melbourne, Florida, and Mr. Boshra is based in NDCA. *Id.* ¶¶ 9, 10. Apple anticipates that both gentlemen are likely witnesses in this case.

The groups within Apple that are responsible for the design, development, and engineering of the accused functionality of Touch ID, Face ID, and Apple Wallet are located in either Cupertino, California (NDCA); Prague, Czech Republic ("Prague"); or Melbourne, Florida ("Melbourne"). *Id.* ¶¶ 8-13. The accused functionality identified by CPC implicates work from teams that include the Core Biometrics Team (fingerprint and face acquisition), Security Engineering and Architecture Team (fingerprint and face matching in the SEP), the Algorithms Team (fingerprint and face matching), and Apple Wallet Apps & Framework Team (application of Touch ID and Face ID to Apple Card as used within the Apple Wallet). *Id.* Specifically:

- Rob Yepez is the Director of the I/O & Sensors Software Group at Apple, which oversees the Core Biometrics Team. Mr. Yepez is located in NDCA, as are the majority of the Core Biometrics Team. *Id.* ¶ 11.

- Libor Sykora is a Software Development Manager on the Security Engineering and Architecture Team at Apple. Mr. Sykora is located in Prague, but confirmed that the majority of those he works with on the accused features are located in NDCA, Prague, or Melbourne. *Id.* ¶ 12.

- Tony Diederich is a Software Development Engineering Manager on the Wallet Apps & Framework Team at Apple.  Mr. Diederich is located in NDCA, as are all of the members of his team.  *Id*. ¶ 13.

Thus, Apple's likely engineering witnesses include Dale Setlak, Michael Boshra, Rob Yepez, Libor Sykora, and Tony Diederich, or members of their various teams.  These engineers work on various aspects of Apple's biometric security technology, including the overall architecture of Touch ID and Face ID, the Secure Enclave Processor (SEP), the Secure Element (SE), and the associated sensor software.  *Id*. ¶¶ 8-13.  A number of these engineers also have knowledge relevant to Apple's Apple Wallet and Apple Card technology.  *Id*.  Neither they nor any of their team members are located in the Western District of Texas ("WDTX").  *Id*.

Apple's employees who are most knowledgeable about marketing, licensing, and finance related to the accused products are all located in NDCA.  *Id*. ¶¶ 14-19.  Vitor Silva is a Product Marketing Manager in the Worldwide Marketing Group and is located in NDCA.  *Id*. ¶ 16.  Ashish Nagre is the Product Management Leader of the Apple Card and Apple Cash Group and is located in NDCA.  *Id*. ¶ 17.  Mr. Silva and Mr. Nagre are knowledgeable regarding marketing for the accused features within the accused products.  *Id*. ¶¶ 16, 17.  Brian Ankenbrandt is knowledgeable about Apple's intellectual property licensing practices relevant to this case and is located in NDCA.  *Id*. ¶ 18.  Mr. Ankenbrandt was also involved in pre-suit communications with Charter Pacific Corporation Ltd.  Compl. Exs. D; E.  Mark Rollins is a Senior Finance Manager at Apple who is knowledgeable regarding financial information relating to the Accused Products and Features and is located in NDCA.  *Id*. ¶ 19.  Apple is not aware of any Apple employees with marketing, licensing, or financial information relevant to this case that are located in WDTX.  *Id*.

¶¶ 14-19.  Apple also is not aware of any other employees with relevant knowledge concerning the claims asserted against Apple that are located in WDTX.  *Id.*

The electronic and paper records for the accused functionalities are predominantly located in and accessible from NDCA.  *Id.* ¶ 8.  The design and development of the relevant functionalities occurred predominantly in NDCA, with some work done in Prague and Melbourne.  *Id.* ¶¶ 8-13.  The financial, licensing, and marketing data relating to the accused functionalities is also located in NDCA.  *Id.* ¶ 14.  Apple has not identified any relevant documents that were generated or are stored in WDTX.  *Id.* ¶¶ 8-19.

In short, Apple's anticipated witnesses and documentation are located primarily in the Bay Area, with some in Prague and Florida.  No anticipated witnesses or documentation are located in WDTX.

### C.    CPC is an Australian Company with No Connections to Texas

According to the Complaint, "CPC is an Australian corporation having its principal place of business located at Level 1, 18 Tedder Avenue, Main Beach, Queensland 4217, Australia".  Compl. ¶ 3.  While the Complaint states that "CPC is an investment company focused on biometric technology including mobile device security, credit card security, and mobile payments," (Compl. ¶ 4) CPC appears to be nothing more than a patent holding company that acquired the Asserted Patents in satisfaction of a security interest owed by the Asserted Patents' former owner, Securicom.[1]  Nothing in the complaint suggests CPC designs, engineers, or sells any product or

---

[1] The inventor, Mr. Christopher Burke, and his company Securicom, and its parent corporation Microlatch, have been involved in disputes over the ownership of the Asserted Patents in court in Australia. The apparent, current resolution has been to divest Mr. Burke and Securicom of ownership of the patents in favor of CPC. *See, e.g.,* https://www.charpac.com.au/charter-pacific-acquires-biometric-security-patents-in-securicom-liquidation/.  It appears that Mr. Burke has instigated another litigation against CPC to regain control of his patents. See https://www.microlatch.hk/post/christopher-burke-sues-charter-pacific.  Resolution of these issues is not necessary for purposes of this brief.

service. CPC is a subsidiary of Charter Pacific Corporation Ltd., an Australian investment company. Compl. ¶ 16. Neither CPC, nor Charter Pacific Corporation, appear to be in the business of providing any **product** related to biometric security, mobile device security, credit card security, or mobile payments.

### D. Relevant Third Parties are Located in the APAC Region

No potentially relevant third parties are located in WDTX. Christopher Burke is the sole-inventor of the patents-in-suit. Compl. ¶ 4. Apple understands Mr. Burke lives in Hong Kong as opposed to Australia, but the difference does not matter for purposes of this motion. According to CPC's Complaint, "CPC acquired [the Asserted Patents] from biometric technology pioneer Securicom (NSW) Pty Ltd" in 2019. *Id*. at ¶ 4. As the original assignee of the Asserted Patents, Securicom might have information relevant to the prosecution, conception, and reduction to practice, of the Asserted Patents. Based on publicly available information, Securicom, to the extent it still exists, is located in Australia.

## III. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In analyzing a motion to transfer under § 1404(a), the law of the regional circuit applies. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

Under section 1404(a), the moving party must first show that the claims "might have been brought" in the proposed transferee district. *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 312-13 (5th Cir. 2008) ("*Volkswagen II*"). This first requirement is certainly met given that Apple is a California corporation headquartered in Cupertino. *See* Compl. ¶ 5; Ex. B ¶ 3.

Second, the movant must show "good cause" by demonstrating that the "transferee venue is clearly more convenient" than the transferor district. *Volkswagen II* at 315. In evaluating

convenience, the district court weighs both private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*.

The convenience of the witnesses is the most important factor in the transfer analysis. *In re: Apple Inc.*, 2020 WL 3249953, at *2 (Fed. Cir. 2020); *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009); *Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, No. 6:150cv00091, 2016 WL 6909479, at *7 (W.D. Tex. Jan. 28, 2016). Moreover, in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *see also, e.g., In re TracFone Wireless, Inc.*, Case No. 2021-136, Dkt. 11 (Fed. Cir. Apr. 20, 2021); *In re Apple Inc.*, 979 F.3d 1332 (Fed. Cir. 2020); *In re Adobe Inc.*, No. 2020-126, 2020 WL 4308164 (Fed. Cir. Jul. 28, 2020).[2]

## IV.   The Northern District of California Is Clearly the More Convenient Venue

### A.   The Private Interest Factors Favor Transfer

The private interest factors strongly favor transfer because the overwhelming majority of witnesses and evidence in this case are located in or are more easily accessible from NDCA.

---

[2] The plaintiff's choice of venue is not a distinct factor in the analysis. *Volkswagen II*, 545 F.3d at 314-15. Nor is the location of counsel. *Volkswagen I*, 371 F.3d at 206.

### 1.      Relative Ease of Access to Sources of Proof

"[T]he Fifth Circuit clarified that despite technological advances that make the physical location of documents less significant, the location of sources of proof remains a 'meaningful factor in the analysis.'" *Wet Sounds, Inc. v. Audio Formz, LLC*, No. 17-cv-141, 2017 WL 4547916, at *2 (W.D. Tex. Oct. 11, 2017), report and recommendation adopted, No. 1:17-cv- 141, 2018 WL 1219248 (W.D. Tex. Jan. 22, 2018) (internal citations omitted). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (internal citation omitted).  Where, as here, the primary documents are located in the transferor district, this factor weighs in favor of transfer.  *Id.* (holding "the district court erred by failing to meaningfully consider the wealth of important information in NDCA" when Apple's relevant evidence was stored in NDCA, and none were stored in WDTX); *see also Parus Holdings Inc. v. LG Elecs. Inc. and LG Elecs. U.S.A. Inc.*, No. 6:19-cv-432-ADA, Dkt. 161 at 4, 7 (W.D. Tex. Aug. 20, 2020).

"In determining the ease of access to sources of proof, the Court will look to the location where the allegedly infringing products were researched, designed, developed and tested."  *XY, LLC v. Trans Ova Genetics, LC*, No. 16-cv-00447, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017); *Uniloc USA Inc. v. Box, Inc.*, No. 1:17-cv-754-LY, 21018 WL 2729202, at *3 (W.D. Tex. June 6, 2018);  *Collaborative Agreements, LLC. v. Adobe Sys. Inc.*, No. 1:14-cv-356, 2015 WL10818739, at *4 (W.D. Tex. Aug. 21, 2015).  When, as is the case here, the bulk of relevant evidence and witnesses are located in the requested transferee district, the ease of access to evidence factor weighs in favor of transfer.

The research, design, and development of the Accused Features in the Accused Products takes place primarily in NDCA, and all of the likely witnesses on this topic, to whom electronically

stored documents and source code are accessible, are located primarily in NDCA (with a few located in Prague and Melbourne). Ex. B ¶¶ 8-13.  Likewise, the key Apple documents relating to the research, design, and development of the Accused Features were generated and are stored primarily in NDCA.  *Id*.  In addition, Apple's likely witnesses and the Apple documents concerning the marketing, sales and financial information for the Accused Products are located in NDCA.  *Id*. ¶¶ 14-19.  The same is true of Apple's licensing functions.  *Id*. ¶ 18.  Thus, the overwhelming majority of the sources of proof regarding the Accused Technology and the Accused Products are in NDCA.

Notably, CPC has asserted as much in a recent court filing. It filed a request for a Discovery Assistance Order under 28 U.S.C. § 1782(a).  *In re CPC*, Case 5:21-mc-80091-SVK (N.D. Ca., April 22, 2021) (Ex. C).[3]  CPC's request seeks discovery from Apple in support of a German patent infringement action that CPC intends to pursue relating to a German patent corresponding to the '705 patent asserted in this case.  *Id.* at 2.  CPC filed that request in the NDCA, asserting that "virtually all" discovery from Apple will come from the NDCA:

> Apple's headquarters are located in this Judicial District. Apple has been headquartered in Cupertino, California since 1976. In re Apple, Inc., 743 F.3d 1377, 1379 (2014) (Newman, J, Dissenting). Apple's management and primary research and development facilities are also located in Cupertino where Apple employs over 13,000 people. Id. at 1379-80. The research, design, and development of the iPhone took place in Cupertino and virtually all Apple business documents and records relating to the research, design, development, marketing strategy, and product revenue for the accused products are located in or near Cupertino. Id. at 1380.

*Id.* at 6 (page 4 of the memorandum filed in support of the request).

---

[3] Magistrate Judge Cousins subsequently denied CPC's 1782 motion.  Order Denying *Ex Parte* Application for Discovery, Dkt. 5, *In re CPC*, Case 5:21-mc-80091-SVK (N.D.Ca., April 27, 2021).

Conversely, there are no unique, relevant sources of proof in WDTX. First, CPC has no presence in WDTX. Second, Apple's relevant employees, to whom electronically stored documents and source code are accessible, all are based in NDCA, Prague, or Melbourne. Third, Apple is not aware of any third-party witnesses who reside in WDTX. Indeed, the relevant third parties Apple has been able to identify thus far are located abroad. To the extent these third parties have relevant sources of proof, it will be located with them. Given that there are numerous sources of proof in NDCA and none in WDTX this factor clearly favors transfer. *See Apple*, 979 F.3d at 1339-40 (District Court failed to give proper weight to Apple's NDCA sources of evidence).

### 2.      Availability of Compulsory Process

Transfer is favored when a transferee forum has absolute subpoena power over a greater number of third-party witnesses. *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337-38 (Fed. Cir. 2009); *Genentech*, 566 F.3d at 1345; *Wet Sounds*, 2017 WL 4547916, at *3. A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person,"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (B). Moreover, the ability to compel live trial testimony is crucial for evaluating a witnesses' testimony. *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

As set forth above in Section II.C., the key relevant third party is located in Hong Kong. Inventor Christopher Burke is located in Hong Kong. Apple is not aware of a single third-party witness who would be within WDTX's subpoena power. Therefore, this factor weighs in favor of transfer, or is at worst, neutral. *Genentech,* 566 F.3d at 1345 (concluding that compulsory-process factor "weighs in favor of transfer" where "there is a substantial number of witnesses within the subpoena power of the Northern District of California and no witness who can be compelled to appear in the Eastern District of Texas").

### 3.      Attendance of Willing Witnesses

The convenience for willing witnesses is the single most important factor in the transfer analysis.  *See, Apple Inc.*, 2020 WL 3249953, at *2; *In re Google Inc.*, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017); *Genentech*, 566 F.3d at 1342; *Auto-Dril*, 2016 WL 6909479, at *7.  As discussed above, all of the likely Apple witnesses are based in NDCA.  *See infra* Sec. II.  These witnesses are a car ride from the courthouse in NDCA, but more than 1,500 miles and a lengthy plane ride from Texas.  None of the likely Apple or CPC witnesses are located in Texas.

If this case remains in Texas, the Apple witnesses would need to spend days away from home and work, as opposed to several hours if the trial takes place in NDCA.  This travel burden is not insignificant and has often been cited as a key reason why transfer is appropriate.  *E.g., Volkswagen II*, 545 F.3d at 317.  This length of travel also imposes additional burdens beyond travel time, such as meal and lodging expenses.  *Volkswagen I*, 371 F.3d at 204-05; *see also In re Acer America Corp.*, 626 F.3d 1252, 1255 (2010).  For all of these reasons, it would be clearly more convenient for NDCA-based witnesses to attend trial in NDCA.  *Volkswagen II*, 545 F.3d at 317 (recognizing the "obvious conclusion" that "it is more convenient for witnesses to testify at home"); *see Apple*, 979 F.3d at 1341-42.

Although some relevant Apple witnesses reside in Florida and the Czech Republic, the recent Federal Circuit decision on mandamus from this Court in *In re TracFone Wireless* reaffirmed the approach in its *Genentech* and *Apple* decisions that in the situation where witnesses are already travelling a long distance to appear at either venue, the relative proximity of one venue over another does not matter.  Case No. 2021-136, Dkt. 11 at *5-6 (Fed. Cir., April 20, 2021).  Citing the rationale in the *Genentech* and *Apple* decisions, the Federal Circuit noted that in the context of the "100 mile rule," it should not be rigidly applied "where 'witnesses . . . will be required to travel a significant distance no matter where they testify.'"  *Id.* at *5.  Here, the

11

witnesses in Prague and Florida will have to travel significant distances regardless of whether the case is in Texas or California. As in *TracFone*, it would be error to find "any inconvenience to these individuals outweighed the convenience of having several party witnesses be able to testify at trial without having to leave home." *Id*. at *6.

On the other hand, there is not a single anticipated witness (or even relevant employee) in WDTX. Even the Plaintiff in this case, an Australia-based patent holding company, has no operations or relevant witnesses in Texas. In situations like this, where most of the likely witnesses are in the transferee district, this factor weighs in favor of transfer. *See TracFone*, Case No. 2021-136, Dkt. 11 at *5-6; *Apple*, 979 F.3d at 1341-42; *HP*, 2018 WL 4692486, at *3; *Genentech*, 566 F.3d at 1343; *Wet Sounds*, 2017 WL 4547916, at *3.

Litigants previously have pointed to Apple facilities in Austin to resist transfer to California. CPC may do so here, but any such argument would be meritless. Even if a company has a presence in the transferor district, this factor still favors transfer if those connections are not tied to the particular case. *See Adobe*, 2020 WL 4308164, at *3 (holding that NDCA was more convenient even though defendant had employees in Austin, Texas "that may have relevant information."). The relevant witnesses in this case are located primarily in NDCA (with some in Prague and Florida), and none at the Austin facilities. *See* Ex. B ¶¶ 8-19; *see also Apple*, 979 F.3d at 1346; *Peak Completion Techs., Inc. v. I-TEC Well Solutions, LLC*, No. A-13cv-086-LY, 2013 WL 12121002, at *3 (W.D. Tex. June 26, 2013) (finding that the presence of office and personnel in the district did not weigh against transfer because those individuals were not likely witnesses). Indeed, on similar facts Judge Yeakel reached this very conclusion in deciding that a recent Apple case should be transferred to NDCA because the relevant Apple witnesses were located there. *See*

12

*Uniloc USA*, 2019 WL 2066121, at \*3.  Thus, the single most important factor in the transfer analysis weighs strongly in favor of transfer.

### 4.        All Other Practical Problems

This factor is neutral.  Although there is a related action in WDTX against HMD Global Oy ("HMD") asserting the '208 and '705 patents, the cases have not been consolidated.  It is unlikely the cases will be consolidated given the stark difference in the stages of the cases.  HMD has not yet received proper service through The Hague Convention, whereas Apple is filing this Motion and will respond to the Complaint on May 6.  *See, CPC Patent Techs. Pty Ltd. v. HMD Global Oy*, Civ. No. 6:21-cv-166.  To consolidate the Apple and HMD matters, the Court would have to significantly delay proceedings in this matter, thereby offsetting any judicial economy created by consolidating them.

### B.        The Public Interest Factors Favor Transfer

The public interest factors also strongly favor transfer because NDCA is significantly less congested than this Court and has a strong local interest in this matter.

### 1.        Court Congestion

Courts in this District have acknowledged that NDCA has a shorter time to trial for patent cases than this District.  *See Box, Inc.*, 2018 WL 2729202, at \*4.  Moreover, this District—and in particular, this Court—are significantly more congested than NDCA.  Currently there are only 241 patent cases pending in NDCA.  Ex. D (NDCA Open Cases).  There are 727 patent cases pending in this Court alone – over three times the number pending before all nineteen Article III judges in NDCA.  Ex. E (Judge Albright Open Cases).  Even the judges with the heaviest patent dockets in NDCA have a small fraction of those handled by this Court.  Judge Chen currently has 29 patent cases on his docket, Judge Tigar has 27 and Judge White has 25.  Ex. F (Judge Chen Open Cases);

Ex. G (Judge Tigar Open Cases); Ex. H (Judge White Open Cases).  Even when expanded to *all* cases (not just patent cases), most judges in NDCA have fewer total cases pending than this Court's patent docket alone.  While this Court may have been able to proceed more quickly to trial recently for certain cases, this Court's docket is substantial, with so many cases being filed in WDTX that in late 2022 or early 2023, when this case is likely to be scheduled for trial, there would be close to one trial set each day based on the number of recent cases filed.  Ex. I (Attachment showing representative recent cases filed and scheduled or anticipated trial dates). And while civil trials were temporarily suspended in NDCA due to the COVID-19 pandemic, NDCA is resuming jury trials as early as June.  *E.g., Finjan LLC v. Cisco Sys. Inc.*, Civ. No. 17-cv-72-BLF, Dkt. 738 (N.D.C.A. Dec. 16, 2020) (setting trial for June 3, 2021).

### 2. Local Interests

The Northern District of California has a strong local interest in this matter because it is the location with the most "significant connections between [the venue] and *the events that gave rise to [the] suit.*"  *See Apple*, 979 F.3d at 1344-45 (emphasis original).  First, Apple's work on the research, design, and development, of the Accused Features primarily takes place in and is ultimately managed from there (in addition to Prague and Florida).  Second, Apple is headquartered there.  Third, most of Apple's likely witnesses are based there.  *See*, Sec. II. B., *supra*.  In contrast, as established above, CPC has no connection to WDTX.  *See*, Sec. II. C., *supra*. And while Apple does have a presence in WDTX, those are "general contacts with the forum that are untethered to the lawsuit" and should be discounted.  *See Apple*, 979 F.3d at 1344-45 (holding the district court "misapplied the law to the facts" by too heavily weighing Apple's general contacts with WDTX.).

In similar situations, this Court and others have favored transfer to the court with interests more closely connected with the issues to be tried.  *See Datascape*, 2019 WL 425069, at *3; *Apple*,

979 F.3d at 1341-42.  Where, as here, the accused technology was "developed and tested" in NDCA, and because this suit "calls into question the work and reputation of several individuals residing" in that district, NDCA's interest in this matter is "self-evident."  *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009); *DataQuill, Ltd. v. Apple Inc.*, No. 13-cv- 706, 2014 WL 2722201, at *4 (W.D. Tex. June 13, 2014) (finding local interest factor favored transfer despite Apple's Austin presence because Apple's design and development activity of the accused products occurred in Cupertino).  The recent *TracFone* decision found this factor weighed in favor of the transferee forum under facts very similar to those here.  *TracFone,* Dkt. 11 at *7 (finding transferee forum "has far stronger local interest in the case than the Western District of Texas" as defendant "operates the accused methods and systems relating to pre-payment" in the transferee forum).  This analysis shows that the NDCA has a stronger local interest than WDTX and thus favors transfer.

### 3.    Familiarity with the Governing Law and Conflicts of Law

The last two factors are neutral.  There are no perceived conflicts of law and both districts are equally qualified to apply patent law.  *TS Tech.*, 551 F.3d at 1320-21.

## V.    CONCLUSION

For the reasons discussed above, Apple therefore respectfully requests that this Court transfer this case to the Northern District of California, as it is a clearly more convenient forum.

Date: May 4, 2021                    Respectfully submitted,

                                     */s/ Seth M. Sproul*
                                     Seth M. Sproul (admitted *Pro Hac Vice*)
                                     CA Bar No. 217711
                                     Geuneul Yang (admitted *Pro Hac Vice*)
                                     CA Bar No. 323287
                                     FISH & RICHARDSON P.C.
                                     12860 El Camino Real, Suite 400

15

San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile:  (858) 678-5099
sproul@fr.com
jyang@fr.com

Benjamin C. Elacqua
TX Bar No. 24055443
Anthony Van Nguyen (admitted *Pro Hac Vice*)
TX Bar No. 24083565
Kathryn Quisenberry
TX Bar No. 24105639
FISH & RICHARDSON P.C.
1221 McKinney Street, Suite 2800
Houston, TX 90067
Telephone:  (713) 654-5300
Facsimile:   (713) 652-0109
elacqua@fr.com
nguyen@fr.com
quisenberry@fr.com

Joy B. Kete (admitted *Pro Hac Vice*)
MA Bar No. 694323
FISH & RICHARDSON P.C.
One Marina Park
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile:  (617) 542-8906
kete@fr.com

Betty H. Chen
TX Bar No. 24056720
FISH & RICHARDSON P.C.
500 Arguello St.
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile:  (650) 839-5071
bchen@fr.com

J. Stephen Ravel
TX Bar No. 16584975
Kelly Ransom
TX Bar No. 24109427
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, TX 78701

Telephone: (512) 495-6429
steve.ravel@kellyhart.com
kelly.ransom@kellyhart.com

*Attorneys for Apple Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2021, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Dhohyung Kim<br>George C. Summerfield<br>James A. Shimota<br>K&L Gates LLP<br>70 W. Madison Street, Suite 3300<br>Chicago, IL 60602<br>DK.Kim@klgates.com<br>Summerfield@stadheimgrear.com<br>Jim.Shimota@klgates.com<br><br>Elizabeth Abbott Gilman<br>K & L Gates LLP<br>1000 Main, Suite 2550<br>Houston, TX 77002<br>Beth.Gilman@klgates.com | Stewart Mesher<br>K & L Gates LLP<br>2801 Via Fortuna, Suite 350<br>Austin, TX 77002<br>stewart.mesher@klgates.com<br>Attorneys for<br>CPC Patent Technologies Pty Ltd. |

/s/ Seth M. Sproul
  Seth M. Sproul