# Exhibit B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| CPC PATENT TECHNOLOGIES PTY LTD., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 6:21-cv-00165-ADA <br><br> **JURY TRIAL DEMANDED** |

### DECLARATION OF MARK ROLLINS IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

I, Mark Rollins, hereby declare:

1. I am over 18 years of age and competent to make this declaration. I am employed as a Finance Manager at Apple Inc. ("Apple") and my primary place of work is Sunnyvale, California. I have been employed by Apple since 2019.

2. I provide this declaration in support of Apple's Motion to Transfer Venue Under 28 U.S.C. § 1404(a) to the Northern District of California ("NDCA") filed in the above-captioned case. Unless otherwise indicated below, the statements in this declaration are based upon my personal knowledge, my review of corporate records maintained by Apple in the ordinary course of business, and/or my discussions with Apple employees. If called to testify as a witness in this matter, I could and would testify competently and truthfully to each of the statements in this declaration under oath.

1

3. Apple is a California corporation and was founded in 1976. Apple is a global business headquartered in Cupertino, California, which is in the NDCA. I understand that the NDCA includes the following counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, San Francisco, San Mateo, Santa Clara, Santa Cruz, and Sonoma. Apple's management and primary research and development facilities are located in or near Cupertino, California, including surrounding cities such as Sunnyvale, all of which are located in the NDCA. The primary operation, marketing, sales, and finance decisions for Apple also occur in or near Cupertino, and Apple business records related to product revenue are located there. As of April 2021, Apple has more than 35,000 employees who work in or near its Cupertino headquarters.

4. I understand that CPC Patent Technologies Pty Ltd. ("Plaintiff") filed the above-captioned patent infringement lawsuit against Apple in the United States District Court for the Western District of Texas ("WDTX"). In its Complaint for Patent Infringement filed on February 23, 2021 ("the Complaint"), Plaintiff alleges infringement of U.S. Patent Nos. 9,269,208 (the "'208 Patent"), titled "Remote Entry System," 9,665,705 (the "'705 Patent"), titled "Remote Entry System," and 8,620,039 (the "'039 Patent"), titled "Card Device Security Using Biometrics" (collectively, the "Asserted Patents"). Complaint ¶ 1; Exs. B, C, A.

5. Based on the Plaintiff's Complaint, I understand that the '208 and '705 Patents generally relate to "enrollment in a biometric security system [that] can be used to unlock the electronic device." Complaint ¶ 14. I understand that the '039 Patent generally relates to "improved smart card device security provided using biometric data." *Id*. ¶ 15.

6. Further, I understand that CPC accuses "Apple iPhone type cellular phones and Apple iPad type tablets, including the Apple iPhone X and any Apple product or device that is

2

substantially or reasonably similar" equipped with Face ID of infringing the '208 and '705 Patents.  Compl. Ex. F, H.  CPC also accuses "Apple iPhone type cellular phones and Apple iPad type tablets, including the Apple iPhone SE (2nd generation) and any Apple product or device that is substantially or reasonably similar" equipped with Touch ID of infringing the '208 and '705 Patents.  Compl. Ex. G, I.  Finally, CPC accuses "Apple iPhones, iPads equipped with Apple Card or device that is substantially or reasonably similar" of accusing the '039 patent.  Compl. Ex. J.

       7.  Despite these vague allegations, for purposes of this Motion to Transfer, I understand based on Plaintiff's Complaint that Plaintiff's infringement allegations for the '208 Patent, '705 Patent and '039 Patent relate to biometric security technology, including Apple's "Touch ID," "Face ID" and "Apple Card loaded into the iPhone Wallet" features (collectively, the "Accused Features").  I reviewed CPC's 1782 motion filed in the NDCA, including its document requests, and that review confirmed that CPC is focusing on these Accused Features.  I will refer to the Apple iPhones and iPads equipped with the Accused Features of infringement as the "Accused Products".

       8.  To the best of my knowledge, all of Apple's engineers who participated in or are knowledgeable about the research, design, and development of the Accused Features have a primary place of work in the NDCA, Prague, Czech Republic ("Prague") or Melbourne, Florida ("Melbourne").  I am not aware of any Apple employees located in the WDTX who worked on the research, design, or development of the Accused Features.  I understand that working files, electronic documents, and any hard copy documents concerning the Accused Features reside on local computers and/or servers either located in or around the NDCA, Prague, or Melbourne or are accessible in the NDCA, Prague, or Melbourne.  To my knowledge, Apple does not have

any unique working files or documents relevant to this case located in the WDTX. I further understand that the relevant source code associated with the Accused Features was developed and tested in the NDCA, Prague, and/or Melbourne. I understand that access to this source code is controlled on a need-to-know basis, and that the source code can be accessed by Apple employees working on the Accused Features in the NDCA, Prague, or Melbourne. I am not aware of any relevant source code relating to the Accused Features that was developed, coded or tested in Texas.

9.   Dale Setlak is a Hardware Development Engineer in the Human Sensing Incubation Hardware Group at Apple. Mr. Setlak's primary workplace is in Melbourne, Florida, and Mr. Setlak primarily works with individuals located in Cupertino, California, Prague, and Melbourne. As a co-founder of AuthenTec, a biometric security company acquired by Apple in 2012 that gave rise to Apple's Touch ID technology, Mr. Setlak and his team were responsible for the research, design, and development of Apple Touch ID. Mr. Setlak confirmed that the research, design, and development of Touch ID occurred in the NDCA, Prague, and Melbourne. Although Mr. Setlak lives in Florida, he commuted to Cupertino, California while working on the research, design, and development of Apple Touch ID. Mr. Setlak further confirmed that the Apple engineers who currently work on Touch ID and Face ID have a primary workplace in the NDCA, Prague, or Melbourne. Neither Mr. Setlak nor any employee on his team who works on Touch ID or Face ID is located in the WDTX. Mr. Setlak has never traveled to Texas in connection with his work on Touch ID or Face ID. Mr. Setlak confirmed that neither he nor any of his team members works with any individuals located in Texas in connection with their work on Touch ID or Face ID.

10. Michael Boshra is a Senior Algorithm Scientist in the Human Interface Device Group at Apple. Mr. Boshra's primary workplace is in Cupertino, California. Mr. Boshra and his team were responsible for certain aspects of the research, design, and development of Apple Touch ID, and Mr. Boshra continues to be responsible for the Touch ID matching algorithm. Mr. Boshra worked at AuthenTec when it was purchased by Apple. Mr. Boshra confirmed that the research, design, and development associated with Touch ID occurred in the NDCA, Prague, and Melbourne. Mr. Boshra further confirmed that the Apple engineers who currently work on Touch ID have a primary workplace in the NDCA, Prague, or Melbourne. Neither Mr. Boshra nor any employee on his team who works on Touch ID is located in the WDTX. Mr. Boshra has never traveled to Texas in connection with his work on Touch ID. Mr. Boshra confirmed that neither he nor any of his team members works with any individuals located in Texas in connection with their work on Touch ID.

11. Rob Yepez is the Director of the I/O & Sensors Software Group at Apple. Mr. Yepez's primary workplace is in Cupertino, California. Mr. Yepez and his team were and are responsible for the research, design, and development of certain aspects of Apple Touch ID and Face ID. Mr. Yepez confirmed that the research, design, and development associated with Touch ID and Face ID occurred in the NDCA, Prague, and Melbourne. Mr. Yepez further confirmed that the Apple engineers who currently work on Touch ID and Face ID have a primary workplace in the NDCA, Prague, or Melbourne. Neither Mr. Yepez nor any employee on his team who works on Touch ID or Face ID is located in the WDTX. Mr. Yepez has never traveled to Texas in connection with his work on Touch ID or Face ID. Mr. Yepez confirmed that neither he nor any of his team members works with any individuals located in Texas in connection with their work on Touch ID or Face ID.

12. Libor Sykora is a Software Development Manager on the Security Engineering and Architecture Team at Apple.  Mr. Sykora's primary workplace is Prague.  Mr. Sykora and his team were and are responsible for the research, design, and development of certain aspects of Apple Touch ID and Face ID.  Mr. Sykora confirmed that the research, design, and development associated with Touch ID and Face ID occurred in the NDCA, Prague, and Melbourne.  Mr. Sykora further confirmed that the Apple engineers who currently work on Touch ID and Face ID have a primary workplace in the NDCA, Prague, or Melbourne.  Neither Mr. Sykora nor any employee on his team who works on Touch ID or Face ID is located in the WDTX.  Mr. Sykora has never traveled to Texas in connection with his work on Touch ID or Face ID.  Mr. Sykora confirmed that neither he nor any of his team members works with any individuals located in Texas in connection with their work on Touch ID or Face ID.

13. Tony Diederich is a Software Development Engineering Manager on the Wallet Apps & Framework Group at Apple.  Mr. Diederich's primary workplace is in Cupertino, California.  Mr. Diederich and his team were and are responsible for the research, design, and development of Apple Wallet and the features that allow Apple Wallet to work in conjunction with, among other things, the Apple Card.  Mr. Diederich confirmed that the research, design, and development associated with Apple Wallet occurred in the NDCA.  Mr. Diederich further confirmed that the Apple engineers who currently work on Apple Wallet have a primary workplace in the NDCA.  Neither Mr. Diederich nor any employee on his team who works on Apple Wallet is located in the WDTX.  Mr. Diederich has never traveled to Texas in connection with his work on Apple Wallet.  Mr. Diederich confirmed that neither he nor any of his team members works with any individuals located in Texas in connection with their work on Apple Wallet.

14. To the best of my knowledge, nearly all Apple employees who have knowledge relevant to marketing, licensing, and financial records related to the Accused Products work in or near the NDCA.  I am not aware of any Apple employee who has unique information relevant to this case and are located in the WDTX.  To the best of my knowledge, related working files, electronic documents, and business records reside on local computers and/or servers either located in or around the NDCA or accessible in the NDCA.  I am not aware of any unique Apple working files or documents located in the WDTX that are relevant to this case.

15. The Apple employees whom Apple expects will be willing witnesses and who have knowledge relevant to marketing, licensing, or financials are myself, Vitor Silva, Ashish Nagre, and Brian Ankenbrandt.  As described below, all of these individuals – including myself – have a primary workplace in or near the NDCA.  I am not aware of any anticipated witnesses of Apple located in the WDTX.

16. Vitor Silva is a Senior iPhone Product Marketing Manager in the iPhone & iPod Product Marketing Group at Apple.  Mr. Silva's primary workplace is in Cupertino, California.  Mr. Silva and his team were and are responsible for the marketing and promotion of Touch ID and Face ID for the iPhone.  Mr. Silva confirmed that the primary place of work for employees on his team is in the NDCA.  Neither Mr. Silva nor any employee on his team is located in the WDTX.  Mr. Silva does not travel to Texas in connection with his work.  Mr. Silva confirmed that neither he nor any of his team members regularly works with any individuals located in Texas in with the normal course of their work on Touch ID or Face ID.

17. Ashish Nagre is a Product Management Leader in the Apple Card and Apple Cash Group at Apple.  Mr. Nagre's primary workplace is in Cupertino, California.  Mr. Nagre and his

team were and are responsible for the product marketing of Apple Card.  Mr. Nagre confirmed that he is knowledgeable about Apple Card, including as it is marketed in the Accused Products.  Mr. Nagre also confirmed that the primary place of work for employees on his team is in the NDCA.  Neither Mr. Nagre nor any employee on his team is located in the WDTX.  Mr. Nagre does not travel to Texas in connection with his work marketing Apple Card.

      18. Brian Ankenbrandt is a Manager in the Intellectual Property Transaction Group at Apple.  Mr. Ankenbrandt's primary workplace is in Cupertino, California.  Mr. Ankenbrandt and his team are responsible for intellectual property licensing at Apple.  Mr. Ankenbrandt confirmed that he is knowledgeable about licensing of intellectual property, including patent rights, by and to Apple.  Mr. Ankenbrandt also confirmed that the primary place of work for employees on his team is in the NDCA with the exception of two individuals (both based remotely in Colorado).  Neither Mr. Ankenbrandt nor any employee on his team is located in the WDTX.  Mr. Ankenbrandt does not travel to Texas in connection with his work as part of his day-to-day responsibilities with Apple.  Mr. Ankenbrandt confirmed that neither he nor any of his team members regularly works with any individuals located in Texas in the normal course of their work.

      19. I am knowledgeable about Apple's sales and financial information concerning the Accused Products.  My primary workplace is in the NDCA.  The primary place of work of employees on my team is the NDCA.  Documents concerning sales and financial information for these products reside on local computers and/or servers either located in or around the NDCA or accessible in the NDCA.  Neither I nor any employee on my team is located in Texas.  I have never traveled to Texas in connection with my work on this team.  None of my team

members works with any individuals located in the Texas with respect to financials relevant to the Accused Products in this matter.

20. As of the date of this declaration, Apple operates over 270 retail stores in the United States, more than 50 of which are in California, including 19 stores in the NDCA. In WDTX, Apple has two retail stores in Austin, two retail stores in San Antonio, and one store in El Paso. I am not aware of any retail employee in these retail stores who was ever involved in the research, design, development, or marketing of the Accused Features. To the extent that any of the Accused Products are sold in the WDTX, they are and were sold nationwide, and are not offered in any manner or degree differently than they are offered elsewhere. Apple has non-retail offices in Austin and Lockhart, Texas (located in the WDTX). To the best of my knowledge, however, none of the Apple employees with relevant information relating to the Accused Features work at these offices or reside in Texas.

21. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that this declaration was executed this 3rd day of May 2021, in Santa Clara, California.

_____
Mark Rollins