**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

CPC PATENT TECHNOLOGIES PTY LTD.,

                Plaintiff,

v.

APPLE INC.,

                Defendant.

Case No. 6:21-cv-00165-ADA

**JURY TRIAL DEMANDED**

<u>**APPLE INC.'S MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6)**</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................... 1

I.      STATEMENT OF FACTS ............................................................................................. 2

        A.      The '039 Patent ................................................................................................. 2

        B.      The '208 and '705 Patents ................................................................................ 4

        C.      CPC's Direct Infringement Allegations ............................................................ 6

        D.      CPC's Indirect Infringement Allegations ......................................................... 9

        E.      CPC's Pre-Suit Damages Allegations ............................................................... 9

II.     LEGAL STANDARDS .................................................................................................. 10

III.    ARGUMENTS................................................................................................................ 11

        A.      CPC's Direct Infringement Claims Should be Dismissed With Prejudice ........... 11

                1.      CPC Does Not Allege that the Accused Products Practice Every
                        Limitation of the '039 Patent .................................................................. 11

                2.      CPC Does Not Allege that the Accused Products Practice Every
                        Limitation of the '208 and '705 Patents ................................................. 13

        B.      CPC's Indirect Infringement Claims Should be Dismissed................................. 15

                1.      CPC's Indirect Infringement Claims Fail Because Its Direct Infringement
                        Claims Fail............................................................................................... 15

                2.      CPC's Indirect Infringement Claims Lack Factual Support .................... 16

        C.      CPC's Claims for Past Damages Lack Support and Should be Dismissed .......... 17

CONCLUSION.................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Antonious v. Spaulding & Evenflo Companies, Inc.*,
    275 F.3d 1066 (Fed. Cir. 2002)..........................................................................13, 17

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017).................................................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................10, 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................10

*Carlton v. Freer Inv. Grp., Ltd.*,
    No. 5:15-cv-00946-DAE, 2017 WL 11046201 (W.D. Tex. Aug. 8, 2017)...........10

*Chapterhouse, LLC v. Shopify, Inc.*,
    No. 2:18-cv-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018)..............11

*Dodots Licensing Solutions LLC v. Lenovo Holding Co., Inc.*,
    No. 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018) .............................17

*Express Mobile, Inc., v. DreamHost LLC*,
    No. 1:18-cv-01173-RGA, 2019 WL 2514418 (D. Del. Jun. 18, 2019) ..................18

*Gabriel De La Vega v. Microsoft Corp.*,
    No. 6:19-cv-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) ............11

*Inhale, Inc. v. Gravitron*,
    LLC, No. 1:18-cv-00762-LY, 2018 WL 7324886 (W.D. Tex. Dec. 10, 2018)................15, 16

*Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*,
    No. 1:14-cv-00134-LY, 2015 WL 3513151 (W.D. Tex. Mar. 24, 2015) .........................15, 16

*Kirsch Research and Dev., LLC v. Atlas Roofing Corp.*,
    No. 5:20-cv-00055-RWS, 2020 WL 8363154 (E.D. Tex. Sept. 29, 2020)............11

*Logic Devices, Inc. v. Apple, Inc.*,
    No. C-13-02943 WHA. 2014 WL 60056 (N.D. Cal. Jan. 7, 2014) ........................16

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
    No. 1-18-CV-309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018)..................10

*PACT XPP Tech., AG v. Xilinx, Inc.*,
  No. 2:07-cv-00563-RSP, 2012 WL 1029064 (E.D. Tex. Mar. 26, 2012)...............................18

*Parity Networks, LLC v. Cisco Sys., Inc.*,
  No. 6:19-cv-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019)............................15

*SuperGuide Corp. v. DirecTV Enterprises, Inc.*,
  358 F.3d 870 (Fed. Cir. 2004)...................................................................................................14

*Vizza Wash, LP v. Nationwide Mutual Insurance Co.*,
  No. 5:20-cv-00680-OLG, 2020 WL 6578417 (W.D. Tex. Oct. 26, 2020) ............................10

## Statutes

35 U.S.C. § 284................................................................................................................................9

35 U.S.C. § 287..............................................................................................................................17

## Other Authorities

Federal Rule of Civil Procedure 8(A)(2) .......................................................................................10

Federal Rule of Civil Procedure 12(b)...........................................................................................18

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................1, 10

Federal Rule of  Civil Procedure 11 ...............................................................................................14

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Apple Inc. respectfully moves the Court to dismiss Plaintiff CPC Patent Technologies Pty Ltd.'s complaint for failing to specify the factual basis for its infringement allegations.

**INTRODUCTION**

CPC's barebones complaint should be dismissed because it fails to serve its fundamental purpose: to provide fair notice of the factual basis for its infringement allegations to Apple. While CPC accuses Apple of directly and indirectly infringing a single claim in each of the Asserted Patents, the complaint contains ***no facts*** supporting key limitations in each Asserted Patent. More specifically, CPC's complaint lacks any support for the '039 Patent's "dependent upon the received card information" limitation, as well as the '208 Patent's and '705 Patent's "number of said entries and a duration of each said entry" limitations. Thus, CPC does not plausibly allege that Apple directly infringes any claim of the Asserted Patents.

CPC's indirect infringement claims are similarly defective. In addition to the deficiencies in CPC's direct infringement pleading, these claims suffer from a lack of any factual support with respect to the necessary intent. CPC offers only boilerplate indirect infringement language. CPC's failure to plead with any specificity provides an additional basis for dismissing those claims. Thus, CPC does not plausibly allege that any third party indirectly infringes any claim of the Asserted Patents.

Finally, CPC's claim for past damages must be dismissed because it fails to allege any facts showing that it has complied with the patent statute's marking requirement, which is a necessary element of an infringement claim for past damages.

1

## I.    STATEMENT OF FACTS

On February 23, 2021, CPC filed this suit for alleged patent infringement in the United States District Court for Western District of Texas.  CPC accuses Apple of directly and indirectly infringing U.S. Patent Nos. 8,620,039 (the "'039 Patent"), 9,269,208 (the "'208 Patent"), and 9,665,705 (the "'705 Patent") (collectively, the "Asserted Patents").  D.I. 1 at ¶¶ 27-28, 33-34, 39-40.  Specifically, CPC accuses Apple iPhones and iPads with Apple Card loaded into the iPhone Wallet of infringing the '039 Patent; CPC accuses Apple iPhones and iPads with Touch ID or Face ID features of infringing the '208 Patent and '705 Patent.  *Id*. at ¶ 2.

### A.    The '039 Patent

The '039 Patent issued on December 31, 2013 and is titled "Card Device Security Using Biometrics."  D.I. 1, Ex. A.  The '039 Patent relates to "security issues associated with use of card devices such as credit cards, smart cards, and wireless card-equivalents such as wireless transmitting fobs."  *Id*. at 1:13-16.  According to the '039 Patent, existing biometric card devices "require[] a central repository (806) of card information 702 and biometric information 801" that is "cumbersome and potentially compromises the privacy of the holder of the card 701."  *Id.* at 2:31-34.  The system disclosed in the '039 Patent purports to solve this problem "by automatically storing a card user's biometric signature in a local memory in a verification station…."  *Id.* at 2:54-55.  More precisely, the '039 Patent discloses a system where the "biometric signature is stored at a memory address *defined by the ('unique') card information* on the user's card as read by the card reader of the verification station."  *Id.* at 2:64-67 (emphasis added).  This is accomplished by using "card data 604 [that] defines the location 607 in the memory 124 where their unique biometric signature is stored" (*id*. at 7:47-49):



**Fig. 4**

*Id*. at Fig. 4.

This dependency between the card and the location of the storage of the biometric data is reflected in the express language of asserted claim 13, which recites:

13. A biometric card pointer enrolment system comprising:

a card device reader for receiving card information;
a biometric reader for receiving the biometric signature;
***means for defining, dependent upon the received card information, a memory location in a local memory external to the card***;
means for determining if the defined memory location is unoccupied; and
means for storing, if the memory location is unoccupied, the biometric signature at the defined memory location.

D.I. 1, Ex. A at Claim 13 (emphasis added).

3

### B.      The '208 and '705 Patents

The '705 Patent is a continuation of the '208 Patent, and thus the '208 and '705 Patents share the same specification.  The '208 Patent issued on February 23, 2016 and is titled "Remote Entry System."  D.I. 1, Ex. B.  The '705 Patent issued on May 30, 2017 and is also titled "Remote Entry System."  D.I. 1, Ex. C.  The '208 and '705 Patents relate to "secure access systems and, in particular, to systems using wireless transmission of security code information." *Id*. at 1:13-15.  According to the '208 and '705 Patents, existing secure access systems "utilise [sic] a communication protocol called 'Wiegand' for communication between the code entry module 403 and the controller 405."  *Id.* at 2:1-3.  However, "[t]he Wiegand protocol does not secure the information being sent between the code entry module 403 and the controller 405." *Id.* at 2:7-9.  The system disclosed in the '208 and '705 Patents purports to solve this problem of providing secure access by "determining at least one of the number of said entries [of a biometric signal] and a duration of each said entry…."  *Id.* at 3:39-40.  Specifically, the '208 and '705 Patents disclose a system where access is granted "by providing a succession of finger presses to the biometric sensor 121, providing that these successive presses are of the appropriate duration, the appropriate quantity, and are input within a predetermined time."  *Id.* at 10:57-60.  "If the successive finger presses are provided within this predetermined time, then the controller 107 accepts the presses as potential control information and checks the input information against a stored set of legal control signals" to allow access.  *Id*. at 10:63-67.  As with the '705 Patent, this requirement that the ***number*** and ***duration*** of the biometric signals be stored and used as part of the process of populating the database of biometric signatures is reflected in the express language of asserted claim 10 of the '208 Patent, which recites:

4

10.  A method for providing secure access to a controlled item in a system comprising a database of biometric signatures, a transmitter sub-system comprising a biometric sensor for receiving a biometric signal, and means for emitting a secure access signal capable of granting more than two types of access to the controlled item, and a receiver sub-system comprising means for receiving the transmitted secure access signal, and means for providing conditional access to the controlled item dependent upon information in said secure access signal, the method comprising the steps of:

populating the database of biometric signatures by:

> receiving a series of entries of the biometric signal;
> ***determining at least one of the number of said entries and a duration of each said entry***;
> mapping said series into an instruction; and
> populating the database according to the instruction;

receiving a biometric signal;

matching the biometric signal against members of the database of biometric signatures to thereby output an accessibility attribute;

emitting a secure access signal conveying information dependent upon said accessibility attribute; and

providing conditional access to the controlled item dependent upon said information, wherein the controlled item is one of: a locking mechanism of a physical access structure or an electronic lock on an electronic computing device.

D.I. 1, Ex. B at Claim 10 (emphasis added).

The same duration requirement is also reflected in the express language of the asserted claim 1 of the '705 Patent, which recites:

1. A system for providing secure access to a controlled item, the system comprising:

a memory comprising a database of biometric signatures;

a transmitter sub-system comprising:

> a biometric sensor configured to receive a biometric signal;
> a transmitter sub-system controller configured to match the biometric signal against members of the database of biometric signatures to thereby output an accessibility attribute; and
> a transmitter configured to emit a secure access signal conveying information dependent upon said accessibility attribute; and

a receiver sub-system comprising:

> a receiver sub-system controller configured to:
> receive the transmitted secure access signal; and
> provide conditional access to the controlled item dependent upon said information;

wherein the transmitter sub-system controller is further configured to:

> receive a series of entries of the biometric signal, ***said series being characterised according to at least one of the number of said entries and a duration of each said entry***;
> map said series into an instruction; and
> populate the data base according to the instruction, wherein the controlled item is one of: a locking mechanism of a physical access structure or an electronic lock on an electronic computing device.

D.I. 1, Ex. C at Claim 1 (emphasis added).

### C.     CPC's Direct Infringement Allegations

CPC offers no facts in the body of its complaint supporting its direct infringement

allegations other than referring to attached claim charts. *See* D.I. 1 at ¶¶ 27, 33, 39. For the '039

Patent's "means for defining, ***dependent upon the received card information***, a memory location

in a local memory external to the card" limitation, CPC pleads the following:

| means[1] for defining, dependent upon the received card information, a memory location in a local memory external to the card; | Computer code defines a memory location for a biometric signature based upon provided card information. *See, e.g., id.*, col. 4, lines 62-67. | Apple's Secure Enclave is a separate, isolated processor built into the device's main system-on-a-chip with a separate processor and area of memory. https://www.howtogeek.com/387934/your-smartphone-has-a-special-security-chip.-heres-how-it-works/. <br><br> Apple Card is built into the Apple Wallet app on iPhone, *i.e.*, the Secure Enclave memory is external to the Apple Card. *See* https://www.apple.com/newsroom/2019/03/introducing-apple-card-a-new-kind-of-credit-card-created-by-apple/. <br><br> The address locations of an Apple security enclave are depicted below: |
| | |  <br> '682 Application, ¶ [0018] & Fig. 7. |

D.I. 1, Ex. J at 2-3.

Although CPC's chart includes reference to memory locations for the "security enclave" [sic], it does not allege that these memory "address locations" are used to store biometric data dependent upon the card data.

For the '208 Patent's "**at least one of** the **number of said entries** and **a duration of each said entry**" limitation, CPC pleads the following for Face ID:

| 10a1. determining at least one of the number of said entries and a duration of each said entry: | The Apple iPhone X populates the database of biometric signatures by determining at least one of the number of said entries and a duration of each said entry.<br><br>More specifically, the Apple iPhone X receives a series of face images through its image sensor on the TrueDepth camera system by having users move or tilt their head to set up a Face ID. |
| --- | --- |
| | <br>https://support.apple.com/en-us/HT208109 |

D.I. 1, Ex. F at 7-8.  For the same limitation, CPC pleads the following for Touch ID for the '208 Patent:

| | |
|---|---|
| 10a1. determining at least one of the number of said entries and a duration of each said entry; | **The Apple iPhone SE populates the database of biometric signatures by determining at least one of the number of said entries and a duration of each said entry.**<br><br>More specifically, the Apple iPhone SE receives a series of fingerprint signal through a sensor by having users to touch a home button repeatedly to set up a Touch ID.<br><br><br>https://www.idownloadblog.com/2016/01/14/touch-id-not-working-try-this/ |
| | <br>https://www.ifixit.com/Teardown/iPhone+SE+2020+Teardown/133066 |
| | <br>https://www.imore.com/how-touch-id-works |

8

D.I. 1, Ex. G at 11-13.  CPC puts forward nearly identical support for the same limitation in the related '705 Patent.  *See* D.I. 1, Ex. H at 11-12; Ex. I at 16-18.

For all of its charts, whether for those addressing Face ID (Exs. F, H) or Touch ID (Exs. G, I), CPC never alleges that the number or duration of fingerprint or face images captured is measured, stored, or used in any way.  There is no allegation as to number or duration at all, other than to allege that there are multiple face images or fingerprint signals.

### D.     CPC's Indirect Infringement Allegations

CPC alleges induced infringement by Apple for all Asserted Patents.  For the '208 Patent, CPC offers only the following allegations:

> 28.     With knowledge of the '208 Patent, Apple has induced its customers to infringe at least claim 10 of that patent by instructing such customers regarding the registration for, and use of, the Touch ID and Face ID functions of the Accused Products.

D.I. 1 at ¶ 28.  CPC offers nearly identical allegations for the '705 Patent and '039 Patent.  *See* D.I. 1 at ¶¶ 34, 40.

### E.     CPC's Pre-Suit Damages Allegations

CPC asks the Court to "award damages pursuant to 35 U.S.C. § 284 adequate to compensate CPC for Apple's past infringement of the Patents-in-Suit…."  D.I. 1 at 7.  To support its compliance with the marking statute necessary to obtain pre-suit damages, CPC states only the following allegations for the '208 Patent:

> 30.     CPC has complied with 35 U.S.C. § 287 with respect to the '208 Patent.

D.I. 1 at ¶ 30.  CPC states identical allegations for the '705 Patent and '039 Patent.  *See* D.I. 1 at ¶¶ 36, 42.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 8(A)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  For a complaint to survive a Rule 12(b)(6) motion to dismiss, "every element of each cause of action must be supported by specific factual allegations." *Carlton v. Freer Inv. Grp., Ltd.*, No. 5:15-cv-00946-DAE, 2017 WL 11046201, at *8 (W.D. Tex. Aug. 8, 2017) (citation omitted).  And all allegations must include "enough factual matter" that, when taken as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "This plausibility standard is met when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 1-18-CV-309-LY, 2018 WL 8261315, at *1 (W.D. Tex. Nov. 30, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A conclusory allegation or a "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

When a complaint fails to comply with these requirements, it fails to state a claim upon which relief can be granted and it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  Further, to the extent that the plaintiff cannot allege facts to remedy their complaint, *i.e.*, amendment would be futile, then the claim should be dismissed with prejudice. *See, e.g., Vizza Wash, LP v. Nationwide Mutual Insurance Co.*, No. 5:20-cv-00680-OLG, 2020 WL 6578417, at *9 (W.D. Tex. Oct. 26, 2020) (dismissing claims with prejudice and denying Plaintiff's motion for to leave to amend because "further amendment would be futile").

## III.   ARGUMENTS

### A.   CPC's Direct Infringement Claims Should be Dismissed With Prejudice

Courts apply the *Iqbal / Twombly* standard when evaluating the sufficiency of direct

infringement claims.  *See, e.g., Gabriel De La Vega v. Microsoft Corp.,* No. 6:19-cv-00612-

ADA, 2020 WL 3528411, at *2 (W.D. Tex. Feb. 11, 2020).

CPC's direct infringement claim should be dismissed because the complaint lacks any

explanation of how Apple's products meet each of the limitations of any asserted claim.  *See*

*Kirsch Research and Dev., LLC v. Atlas Roofing Corp.*, No. 5:20-cv-00055-RWS, 2020 WL

8363154, at *2 (E.D. Tex. Sept. 29, 2020) ("To survive a motion to dismiss, therefore, a plaintiff

must allege facts sufficient to create a plausible inference that ***each element*** of the claim is

infringed by the accused products.") (emphasis added); *see also Chapterhouse, LLC v. Shopify,*

*Inc.,* No. 2:18-cv-00300-JRG, 2018 WL 6981828, at *1 (E.D. Tex. Dec. 11, 2018) ("If it is

apparent from the face of the complaint that an insurmountable bar to relief exists, and the

plaintiff is not entitled to relief, the court must dismiss the claim.").

### 1.   CPC Does Not Allege that the Accused Products Practice Every Limitation of the '039 Patent

The sole asserted claim in the '039 Patent requires, among other limitations, "means for

defining, ***dependent upon the received card information***, a memory location in a local memory

external to the card."  D.I. 1, Ex. A at Claim 13 (emphasis added).  In other words, the memory

location used to store the biometric data depends on received card information.  CPC fails to

make any allegation that this requirement is met.  Instead, as shown above in Section I.C., it

merely alleges that the Apple Secure Enclave Processor ("SEP") stores fingerprint data as part of

Touch ID but never alleges that the accused products store this information in any way

dependent on the card information.  CPC cites to three pieces of evidence, but none reference or

indicate that the memory location for the fingerprint is dependent on or even related to the card. D.I. 1, Ex. J at 2-3 (citing (1) a third-party news article on the Apple Secure Enclave process components; (2) an Apple article introducing the Apple Card; and (3) a figure and its associated brief description from a 2014 Apple patent application).

First, the third-party news article mentions memory generally but does not discuss any aspects of how a memory location is defined, which is required to allege that the claim limitation is met.  Second, the Apple Card article does not mention memory at all, and therefore does not advance CPC's allegations for this limitation.  Third, the figure from the 2014 Apple patent application depicts "a diagram illustrating one embodiment of a memory address space and views there from the SEP, the CPU, and other peripherals."  D.I. 1, Ex. J at 3 (language from cited "'682 Application, ¶ [0018]").[1]  Other than showing the SEP has a memory location in which something is stored, the cited figure and language from the patent application say nothing about storing biometric data depending on received card information.  Specifically, there is no disclosure of how the locations are defined, let alone that they are defined *dependent upon card received information*, or any other information for that matter.  And CPC makes no such allegation.  Indeed, it cannot because this is not how the accused products operate.  The location where biometric information is stored is unrelated to any information received from a user's Apple Card.  The processes are separate, a fact that is apparent from the ability to enroll an Apple Card in Apple Wallet without Touch ID or Face ID enabled, and the ability to use Touch

---

[1] CPC makes no attempt to tie this 2014 Apple patent application to any component or function in any of the accused products.  It appears that CPC identified one of Apple's thousands of patent applications and included it as alleged evidence of how the specific Apple products accused in this case operate without any due diligence or explanation of how the patent application ties to the products.  This is far from pleading factual content that allows the Court to draw the reasonable inference that Apple's products operate as disclosed in the patent application.

ID or Face ID without Apple Card.  Importantly, the Court need not address how the products work to decide this issue in Apple's favor.  Rather, Apple's motion should be granted because even accepting CPC's factual allegations as true, which the Court must at this stage, CPC does not allege that this limitation is met.

Even when lacking conclusive evidence, a party filing a patent infringement complaint must nonetheless have a good faith belief, "based on some actual evidence uncovered during the prefiling investigation, that each claim limitation reads on the accused device either literally or under the doctrine of equivalents."  *Antonious v. Spaulding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1074 (Fed. Cir. 2002).  That is, prior to filing suit, plaintiff must have concluded, based on direct evidence or at least on good faith belief, that the accused product has specific features that would satisfy each claim limitation of at least one claim.  CPC's lack of an allegation on this limitation suggests it could not make this allegation in good faith.

Thus, because CPC does not allege that every limitation of an asserted claim is met, and amendment would be futile given how the accused products operate, CPC's direct infringement claim for the '039 Patent should be dismissed with prejudice.

### 2.   CPC Does Not Allege that the Accused Products Practice Every Limitation of the '208 and '705 Patents

The sole asserted claim in the '208 Patent requires that the accused device "determin[e] ***at least one of*** the ***number of said entries*** and ***a duration of each said entry***."  D.I. 1, Ex. B at Claim 10 (emphasis added).  Similarly, the sole asserted claim in the '705 Patent requires that the accused device "receive a series of entries of the biometric signal, said series being characterised [sic] according to ***at least one of*** the ***number of said entries*** and ***a duration of each said entry***." D.I. 1, Ex. C at Claim 1 (emphasis added).  In other words, the express claim language requires

that, when populating the database of biometric signatures, the biometric signal must include both the number of finger presses and the duration of those presses.  *See SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 886 (Fed. Cir. 2004) ("The phrase 'at least one' precedes a series of categories of criteria, and the patentee used the term 'and' to separate the categories of criteria, which connotes a conjunctive list. ... Therefore, the district court correctly interpreted this phrase as requiring that the user select at least one value for each category.").

CPC fails to allege that this requirement is met.  Instead, as shown above in Section I.C., it points to either the face scanner for the Face ID accused products or fingerprint scanner for the Touch ID accused products.  D.I. 1, Ex. F at 7-8; Ex. G at 11-13; Ex. H at 11-12; Ex. I at 16-18.  CPC's claim charts do not mention anything about the number or duration of biometric signals (beyond stating that there are multiple images), nor does CPC allege any use of duration in any accused product.  The evidence CPC points to for the face scanner for Face ID is silent as to any number, duration, or any time-based attribute.  Similarly, the evidence CPC points to for the fingerprint scanner for Touch ID is equally silent as to any number, duration, or any time-based attribute.  These critical claim limitations, ones at the heart of the '208 and '705 Patents, have zero factual support or even allegations that they are met in CPC's complaint.  And the reason is the same as for the '039 Patent: this allegation is missing because this is not how the accused products operate and CPC has no basis under Rule 11 on which to make such an allegation.  Information about the number and duration of Face ID and Touch ID entries is not used for enrollment.  Apple has published copiously on its Face ID and Touch ID functionality, and CPC cites nothing from this body of publications that says anything about storing or using a duration of a fingerprint or face image.  As with the '039 Patent, for purposes of this motion, the Court must take as true CPC's factual allegations.  But because CPC's complaint did not allege that

14

either the number or duration elements were met for either the '208 or '705 Patent, it did not

meet the required pleading standard.

Thus, because CPC does not allege that every limitation of an asserted claim is met, and

because amendment would be futile given how the accused products operate, CPC's direct

infringement claims for the '208 and '705 Patents should be dismissed with prejudice.

### B.     CPC's Indirect Infringement Claims Should be Dismissed

"To adequately plead a claim of induced infringement, a plaintiff must demonstrate that

'the defendant knew of the patent and that the induced acts constitute patent infringement.'"

*Parity Networks, LLC v. Cisco Sys., Inc.,* No. 6:19-cv-00207-ADA, 2019 WL 3940952, at *2

(W.D. Tex. July 26, 2019) (quoting *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926

(2015)).  More precisely, "[t]o state a claim for induced infringement, 'a complaint must plead

facts plausibly showing that the accused infringer specifically intended [another party] to

infringe [the patent] and knew that the [other party]'s acts constituted infringement.'"  *Inhale,*

*Inc. v. Gravitron*, LLC, No. 1:18-cv-00762-LY, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10,

2018) (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376–77 (Fed. Cir. 2017)

(internal quotations omitted)).

### 1.     CPC's Indirect Infringement Claims Fail Because Its Direct Infringement Claims Fail

CPC's indirect infringement allegations fail because it has not alleged facts showing

direct infringement of any claim, as detailed above.  *See Joao Control & Monitoring Sys., LLC v.*

*Protect Am., Inc.,* No. 1:14-cv-00134-LY, 2015 WL 3513151, at *3 (W.D. Tex. Mar. 24, 2015)

("Regarding indirect infringement, it is axiomatic that there can be no inducement or

contributory infringement without an underlying act of direct infringement.") (quotation, citation

omitted).  For the reasons discussed above, CPC makes no such showing here and its indirect infringement claims should be dismissed.

### 2.    CPC's Indirect Infringement Claims Lack Factual Support

The entirety of CPC's indirect infringement case rests on boilerplate accusations lacking any factual support.  As described above, for the '208 Patent, the entirety of CPC's indirect infringement allegation consist of a single sentence: "[w]ith knowledge of the '208 Patent, Apple has induced its customers to infringe at least claim 10 of that patent by instructing such customers regarding registration for, and use of, the Touch ID and Face ID function of the Accused Products."  D.I. 1 at ¶ 28.  CPC offers nearly identical allegations for the other two Asserted Patents.  *See* D.I. 1 at ¶¶ 34, 40.  CPC does not allege any facts or cite to any evidence to support these allegations.  CPC makes no effort to identify which customers it believes Apple induces into infringement, what "registration" means, or which of the many uses of Touch ID and Face ID it believes Apple's customers practice with respect to the '208 Patent.  This Court requires that CPC's complaint "must plead facts plausibly showing that the accused infringer specifically intended" Apple's customers to infringe, but CPC has not done so.  *Inhale*, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018) (relying on the *Iqbal* / *Twombly* standard).  These factual allegations must be non-conclusory.  *Iqbal*, 556 U.S. at 680.  CPC does not identify a single non-conclusory fact that, even if accepted as true, would show that Apple ***specifically intended*** its customers to infringe the Asserted Patents.  Apple instructing its customers to use its product does not allege the specific intent required for indirect infringement.  *See Logic Devices, Inc. v. Apple, Inc.,* No. C-13-02943 WHA. 2014 WL 60056, at *2 (N.D. Cal. Jan. 7, 2014) (granting motion to dismiss induced infringement because, in part, "[t]he complaint is further devoid of any facts that Apple ***specifically intended*** that their programmers and developers

infringe the '244 patent. That Apple can explore the basis for Logic Devices' inducement claim during discovery cannot save the operative complaint as pled.") (emphasis added).

Rather than assert specific facts based on a good faith belief developed from its pre-suit investigation, CPC resorts to generic recitations. *See Antonious*, 275 F.3d at 1074 (holding a good faith belief should be based on "some actual evidence" developed during the presuit investigation). Such high-level and conclusory assertions are insufficient to plead induced infringement under the law. *See Dodots Licensing Solutions LLC v. Lenovo Holding Co., Inc.*, No. 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018) (dismissing induced infringement claims because "[a]lthough Plaintiff cites Defendants' website as support for its allegation, it does so generically and does not identify any particular statement or material that plausibly suggests Defendants intend to induced infringement of the Patents-in-Suit").

## C.    CPC's Claims for Past Damages Lack Support and Should be Dismissed

Much like its indirect infringement allegations, CPC's assertion that it complied with the § 287 patent marking statute and thus is entitled to past damages rests on boilerplate language lacking factual support. As described above, for the '208 Patent, CPC's complete marking compliance allegation is "CPC has complied with 35 U.S.C. § 287 with respect to the '208 Patent." D.I. 1 at ¶ 30. CPC offers identical allegations for the other two Asserted Patents. *See* D.I. 1 at ¶¶ 36, 42. CPC puts forward no evidence or facts to support its assertion that it properly marked its own products in adherence with the strict requirements of the § 287 patent marking statute. And while one of three asserted claims is a method claim, that patent, the '208 Patent, contains ten system claims compared to only three method claims.

Because CPC reserves the right to assert system claims against Apple, CPC has the burden to show that it complied with the patent marking statute. *See Arctic Cat Inc. v.*

*Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017).  As such, courts have held that, at the motion to dismiss stage, "[a] claim for past damages requires pleading compliance with the marking statute—even when compliance is achieved, factually, by doing nothing at all."  *Express Mobile, Inc., v. DreamHost LLC*, No. 1:18-cv-01173-RGA, 2019 WL 2514418, at *2 (D. Del. Jun. 18, 2019) (dismissing past damages claim due to failure to plead compliance with marking statute); *see also PACT XPP Tech., AG v. Xilinx, Inc.,* No. 2:07-cv-00563-RSP, 2012 WL 1029064, at *2 (E.D. Tex. Mar. 26, 2012) ("The Federal Circuit has held that a patentee's failure to comply with the marking statute is not a defense to patent infringement, but is instead a limitation on the patentee's recovery of damages ***when it fails to plead*** and prove compliance with the marking statute.") (citing *Motorola, Inc. v. U.S.*, 729 F.2d 765, 769–771 (Fed. Cir. 1984)) (emphasis added).

Because CPC does not plead any facts related to compliance with the marking statute, its claim for pre-suit damages should be dismissed as a matter of law.

**CONCLUSION**

For the reasons stated above, and because amendment would be futile, the Court should dismiss CPC's complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Date: May 6, 2021                              Respectfully submitted,

                                              /s/ Seth M. Sproul
                                              Seth M. Sproul (admitted *Pro Hac Vice*)
                                              CA Bar No. 217711
                                              Geuneul Yang (admitted *Pro Hac Vice*)
                                              CA Bar No. 323287
                                              FISH & RICHARDSON P.C.
                                              12860 El Camino Real, Suite 400
                                              San Diego, CA 92130
                                              Telephone: (858) 678-5070
                                              Facsimile:  (858) 678-5099
                                              sproul@fr.com
                                              jyang@fr.com

                                              Benjamin C. Elacqua
                                              TX Bar No. 24055443
                                              Tony Nguyen
                                              TX Bar No. 24083565
                                              Kathryn Quisenberry
                                              TX Bar No. 24105639
                                              FISH & RICHARDSON P.C.
                                              1221 McKinney Street, Suite 2800
                                              Houston, TX 90067
                                              Telephone:  (713) 654-5300
                                              Facsimile:   (713) 652-0109
                                              elacqua@fr.com
                                              nguyen@fr.com
                                              quisenberry@fr.com

                                              Joy B. Kete (admitted *Pro Hac Vice*)
                                              MA Bar No. 694323
                                              FISH & RICHARDSON P.C.
                                              One Marina Park
                                              Boston, MA 02210
                                              Telephone: (617) 542-5070
                                              Facsimile:  (617) 542-8906
                                              kete@fr.com

Betty H. Chen
TX Bar No. 24056720
FISH & RICHARDSON P.C.
500 Arguello St.
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile:  (650) 839-5071

J. Stephen Ravel
TX Bar No. 16584975
Kelly Ransom
TX Bar No. 24109427
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, TX 78701
Telephone: (512) 495-6429
steve.ravel@kellyhart.com
kelly.ransom@kellyhart.com

*Attorneys for Apple Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2021, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Dhohyung Kim<br>George C. Summerfield<br>James A. Shimota<br>K&L Gates LLP<br>70 W. Madison Street, Suite 3300<br>Chicago, IL 60602<br>DK.Kim@klgates.com<br>Summerfield@stadheimgrear.com<br>Jim.Shimota@klgates.com<br><br>Elizabeth Abbott Gilman<br>K & L Gates LLP<br>1000 Main, Suite 2550<br>Houston, TX 77002<br>Beth.Gilman@klgates.com | Stewart Mesher<br>K & L Gates LLP<br>2801 Via Fortuna, Suite 350<br>Austin, TX 77002<br>stewart.mesher@klgates.com<br>Attorneys for<br>CPC Patent Technologies Pty Ltd. |

*/s/ Seth M. Sproul*
Seth M. Sproul

21