**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| CPC PATENT TECHNOLOGIES PTY LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:21-cv-00165-ADA |
| | ) |
| APPLE INC., | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |

**PLAINTIFF CPC PATENT TECHNOLOGIES PTY LTD.'S**
**OPPOSITION TO DEFENDANT APPLE INC.'S MOTION**
**TO DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6)**

## I.    Introduction

Plaintiff, CPC Patent Technologies PTY Ltd. ("CPC"), filed its complaint for its infringement of U.S. Patent Nos. 9,269,208 ("the '208 Patent"), 9,665,705 ("the '705 Patent"), and 8,620,039 ("the '039 Patent"). The complaint with exhibits comprises 162 pages of materials, including 75 pages of infringement claim charts. *See* ECF Docket No. 1. Despite the detail contained in these documents, Apple asserts in its Motion to Dismiss Complaint Pursuant to Rule 12(b)(6) [ECF Docket No. 23] that CPC lacked sufficient allegations of infringement for all three of the patents in suit. Apple says virtually nothing regarding the proper construction of the challenged limitations and the fact-intensive nature of the inquiry into claim coverage. In fact, CPC's infringement allegations are more than sufficient to withstand a motion to dismiss.

Apple also moves to dismiss CPC's claims for indirect infringement and past damages. However, Apple ignores evidence cited in, and appended to, the complaint, and urges standards of pleading sufficiency that simply do not exist. For the reasons stated herein, the Court should deny the instant motion.

## II.   The Legal Standards

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  In deciding such a motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "A claim has facial plausibility when the [non-movant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

The Fifth Circuit in *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) cited approvingly the decision in *Ventura Assoc. Corp. v. Zenith Data Sys. Corp.*, which, in turn, held that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Ventura Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429. 432 (1993).

As explained below, the instant motion necessarily implicates claim construction.  The Federal Circuit reversed a district court's dismissal of a patent infringement case because the defendants' "objections to [the plaintiff's] proposed claim construction [was] a dispute not suitable for resolution on a motion to dismiss."  *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed.

Cir. 2018).   As a practical matter, a motion to dismiss for non-infringement absent a claim construction ruling is inadvisable because: 1) under this Court's Patent Local Rules, claim construction proceeds in an orderly fashion; 2) an assessment of claim construction often requires the consideration of extrinsic evidence, which is not generally considered on a motion to dismiss for failure to state a claim; and 3) even if the Court adopted a construction favorable to CPC, the Court would still need to assess infringement, which itself is "a question of fact."  *See Regents of University of Michigan v. Leica Microsystems Inc.*, 19-CV-07470-LHK, 2020 WL 2084891 (N.D. Cal. April 30, 2020) at *6-7 (decided in accordance with N.D. Cal. Patent Rules).

For the reasons expressed below, the application of the foregoing legal principles to this situation—treating the complaint's infringement allegations, augmented by the documents cited therein or attached thereto, as true and disfavoring dismissal without a ruling on claim construction—warrants denying the instant motion.

## III.    The Complaint Contains Adequate Direct Infringement Allegations

The products accused of infringing the patents in suit include iPhones and iPads equipped with Touch ID or Face ID, and, in the case of the '039 Patent, further equipped with Apple Card loaded into the iPhone Wallet.  ECF Docket No. 1, ¶ 2.  As shown herein, CPC has pled facts showing such infringement sufficient to withstand a motion to dismiss.

### A.    '039 Patent - "*dependent upon the received card information*"

#### 1.    Claim Construction

Apple argues that CPC's pleadings do not provide a plausible basis for the accused products satisfying the '039 Patent limitation "means for defining, ***dependent upon*** the received card information, a memory location in a local memory external to the card" because the processes

for enrolling biometric data and for enrolling an Apple Card in Apple Wallet are "separate."  Apple

Motion at 12.  Apple's argument is a function of the proper construction of "dependent upon"

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd, 517 U.S. 370

(1996) (in the first step of a patent infringement analysis, the court determines the meaning of the

disputed claim terms).  Here, Apple fails to propose any specific claim construction of the

"dependent upon" limitation, let alone one that requires that the subject enrollment processes be

somehow related.

In any event, "[t]he words of a claim are generally given their ordinary and customary

meaning as understood by a person of ordinary skill in the art in question at the time of the

invention."  *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1345 (Fed. Cir. 2009) (citation

omitted).  The plain meaning of "dependent upon" is "contingent on or determined by."

https://www.lexico.com/en/definition/dependent.    Apple references intrinsic evidence that

distinguishes the claimed invention from the prior art.  Apple Motion at 2-3.  Specifically, Apple

cites to passages from the specification that describe the prior art depicted in Figure 2 and an

embodiment of the claimed invention depicted in Figure 4, both of which are replicated below:



As the passages from the '039 Patent cited by Apple make clear, a distinction between the claimed invention and the prior art is that the latter requires "a central repository (806) of card information 702 and biometric information 801," while, the former automatically stores "a user's biometric signature in a *local* memory in a verification station."  Apple Motion at 2 (emphasis added) (citations omitted).  This distinction in no way implicates a related enrollment of credit card information and biometric data.

Apple cites to passages from the '039 Patent that further describe the embodiment depicted in Figure 4.  *See id.*  The '039 Patent makes clear that it "describes only some embodiments of the present invention, and modifications and/or changes can be made thereto without departing from the scope and spirit of the invention, the embodiments being illustrative and not restrictive."  '039 Patent, col. 12, lines 23-26.  Even without that clarification, it is a familiar axiom that the scope of the claims is not limited to the preferred embodiments described in the specification.  *See, e.g., Cordis Corp. v. Medtronic Ave, Inc.,* 339 F.3d 1352, 1365 (Fed. Cir. 2003).

As discussed above, it would be inapposite to grant a motion to dismiss for alleged non-infringement absent a claim construction ruling.  *See, e.g., Nalco*, 883 F.3d at 1349.  Regardless, the claim language "dependent upon" is one that has a well understood plain and ordinary meaning "contingent on or determined by," and the claim limitation in which that language appears means "means for defining, contingent on *or* determined by, the received card information, a memory location in a local memory external to the card."  Because Apple's motion regarding the '039 Patent is not predicated on that construction, it must fail.

## 2.   Claim Coverage

With regard to whether the accused devices are covered by the claims of the '039 Patent—an issue of <u>fact</u>—the sole issue raised by instant motion is whether there are means for defining

a memory location in a local memory external to a credit card at least contingent upon information received about such credit card. Apple replicates the entirety of CPC's claim-coverage allegations regarding this limitation, including CPC's citations to information from Apple's website and Apple's published patent application number 2014/0089682 ("the '682 Application"). Apple Motion at 6. As noted above, these cited documents may be considered in determining the sufficiency of CPC's infringement allegations. *See Collins*, 224 F.3d at 498-99, *citing Ventura Assoc.*, 987 F.2d at 432.

Starting with the '682 Application, Figure 7 (replicated below) is "a diagram if the memory space in the [system on a chip]" showing three views of such space: 1) the secure enclave processor; 2) the central processing unit; and 3) peripherals. '682 Application, ¶ [0086].



The "peripherals" referenced in the foregoing passage and figure "may include interface controllers . . . including interfaces such as Universal Serial Bus (USB), peripheral component interconnect (PCI) including PCI Express (PCIe), serial and parallel ports, etc." *Id.,* ¶ [0038]. Such peripherals "may not have access to the [secure enclave processor] configuration space (cross-hatched areas 128E and 128F), except for the secure mailbox 60," and "may also not have access to either trust Zone (cross-hatched areas 128G and 128H)." *Id.*, ¶ [0089].

As for the information derived from Apple's website, "[a] unique card number is created on iPhone for Apple Card and stored safely in the device's Secure Element, a special security chip used by Apple Pay."   https://www.apple.com/newsroom/2019/03/introducing-apple-card-a-new-kind-of-credit-card-created-by-apple/.   "Every purchase is secure because it is authorized with Face ID or Touch ID and a one-time unique dynamic security code." *Id.*  The fingerprint data underlying Touch ID "is encrypted, stored on device, and protected with a key available only to the Secure Enclave." ECF Docket No. 10-1 at 3, *citing* https://support.apple.com/en-us/HT204587.

In short, where an accused device is equipped with Apple Card, the fingerprint data underlying Touch ID must be stored in a memory location in the secure enclave allowing the transmission of a dynamic security code authorizing Apple Card purchases, *i.e.,* the memory location is contingent upon this ability to send this dynamic security code, which, in turn, is contingent upon the enrollment of an Apple Card.

Apple characterizes the enrollment processes for fingerprint data and Apple Card as separate, given "the ability to enroll an Apple Card in Apple Wallet without Touch ID or Face ID enabled, and the ability to use Touch ID and Face ID without Apple Card." Apple Motion at 12-13.  First, Apple cites nothing in support of these assertions.  Second, as explained above with

regard to claim construction, the ability to enroll Apple Card independent of Touch ID is unrelated to the memory locations in which fingerprint data is stored, as is the ability to use Touch ID independent of Apple Card.  Thus, Apple's arguments are insufficient to support its position.

      **B.**     **'208 and '705 Patents - "*at least one of the number of said entries and a duration of each said entries*"**

          **1.**     **Claim Construction**

Claim 10 of the '208 Patent requires "determining at least one of the number of [biometric signal] entries and a duration of each said entry."[1]  '208 Patent, claim 10.  Claim 1 of the '705 Patent requires that the patented device "receive a series of entries of the biometric signal, said series being characteri[z]ed according to at least one of the number of said entries and a duration of each said entry."  '705 Patent, claim 1.  According to Apple, this "express claim language requires that, when populating the database of biometric signatures, the biometric signal ***must include*** both the number of finger presses and the duration of those presses."  Apple Motion at 13-14 (emphasis added).  Apple's position turns upon the construction of "determining" in the '208 Patent, and "being characterized" in the '705 Patent.  Again, Apple proposes no construction for either term, focusing rather upon the phrase "at least one of."  *See id.* at 14.

The plain meaning of "determine" is "to establish or ascertain definitely, as after consideration, investigation, or calculation."  https://www.thefreedictionary.com/determining.  Thus, a plain and ordinary meaning of the relevant limitation of '208 Patent claim 10 would be

---

[1] Although CPC opted to chart as "representative" claim 10 of the '208 Patent, which contains the "determining" limitation, independent claim 1 of the '208 patent does not contain that limitation. CPC alleges that Apple infringes claim 1 of the '208 Patent (among others), and will further detail its position in its preliminary infringement contentions.

"ascertaining definitely at least one of the number of [biometric signal] entries and a duration of each said entry." The plain meaning of "characterize" is "to describe the qualities or peculiarities of."  https://www.thefreedictionary.com/characterized.  As such, a plain and ordinary meaning of the "being characterized by" limitation of the '705 Patent's claim 1 would be to "receive a series of entries of the biometric signal, said series being described according to at least one of the number of said entries and a duration of each said entry."

These plain meanings are consistent with specification description of the enrollment process, wherein an ordinary user's fingerprint data is enrolled via a certain number of finger presses of a specified duration.  *See* '208 Patent, col. 10, lines 59-62; '705 Patent, col. 11, lines 3-7.  There is nothing in the plain and ordinary meaning of the disputed language or in the specification teachings requiring that the biometric signal must itself ***include*** the number of finger presses or the duration of those presses.

Apple also contends that the "at least one of" language requires that "the biometric signal must include ***both*** the number of finger presses and the duration of those presses."  Apple Motion at 14.  The authority cited by Apple to support this proposition, *SuperGuide Corp. v. DirecTV Enterprises, Inc.*, had the following to say regarding such language:

> The phrase 'at least one of' precedes a series of categories of criteria, and the patentee used the term 'and' to separate the categories of criteria, which connotes a conjunctive list . . . the phrase 'at least one of' modifies each member of the list, i.e., each category in the list. Therefore, the district court correctly interpreted this phrase as requiring that the user select at least one value for each category;

*SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 886 (Fed. Cir. 2004).

In this case, the relevant language includes an important word not found in the language at issue in *SuperGuide*: "at least one of the number of said entries and a duration of ***each*** said entry" (emphasis added).  Citing *SuperGuide*, Apple contends that "at least one of" modifies both "the

number of said entries" and "a duration of *each* said entry." However, the resulting construction

makes no sense: "at least one of the number of said entries and <u>at least one of a duration of *each*</u>

<u>said entry</u>."  Further, such construction is inconsistent with the specification teaching "the control

information is encoded by *either* or both (a) the number of finger presses and (b) the relative

duration of the finger presses."  '208 Patent, col. 10, lines 50-52; '705 Patent, col. 10, lines 61-63

(emphasis added).

In short, there is no reason during this stage of the proceedings that the Court should depart

from the plain and ordinary meaning of the disputed language -- "either or both of the number of

said entries and a duration of each said entry"  Given that Apple's motion with regard to the '208

and '705 Patents is predicated upon an erroneous construction that is inconsistent with plain and

ordinary meaning, it should be denied.

### 2.    Claim Coverage

CPC has provided a series of claim charts comparing representative claims of the '208 and

'705 Patents to representative accused products, each chart showing how the subject limitations

are satisfied, given the proper constructions thereof:

> The Apple iPhone X populates the database of biometric signatures by determining at least
> one of the number of said entries and a duration of each said entry. More specifically, the
> Apple iPhone X receives a series of face images through its image sensor on the TrueDepth
> camera system by having users move or tilt their head to set up a Face ID (ECF Docket
> No. 1-6 at 7 (emphasis added));

> The Apple iPhone SE populates the database of biometric signatures by determining at
> least one of the number of said entries and a duration of each said entry. More specifically,
> the Apple iPhone SE receives a series of fingerprint signal through a sensor by having users
> to touch a home button repeatedly to set up a Touch ID (ECF Docket No. 1-7 at 11
> (emphasis added));

> The Apple iPhone X includes transmitter sub-system controller configured to receive a
> series of entries of the biometric signal, said series being characterized according to at least
> one of the number of said entries and a duration of each said entry.  More specifically, the
> Apple iPhone X receives a series of face images through its image sensor on the TrueDepth

camera system by having users move or tilt their head to set up a Face ID (ECF Docket No. 1-8 at 11 (emphasis added)); and

The Apple iPhone SE includes transmitter sub-system controller configured to receive a series of entries of the biometric signal, said series being characterized according to at least one of the number of said entries and a duration of each said entry. More specifically, the Apple iPhone SE receives a series of fingerprint signal through a sensor by having users to touch a home button repeatedly to set up a Touch ID (ECF Docket No. 1-9 at 16 (emphasis added)).

Representative series of biometric signal entries sufficient for enrolling a user's biometric data are also graphically depicted in the claim charts attached to the complaint:



*See, e.g.,* ECF Docket No. 1-8 at 11                    *See, e.g.,* ECF Docket No. 1-9 at 16

The foregoing discussions and depictions show that, for purposes of enrolling a user's biometric data, the accused devices determine (establish) a number of biometric data entries in a series sufficient for such enrollment, with such number characterizing (describing the quality of) said series for enrollment purposes. As such, the complaint and its accompanying documents contain more than sufficient allegations to survive dismissal of its claims of infringement of the '208 and '705 Patents.

## IV.   The Complaint Contains Adequate Indirect Infringement Allegations

CPC alleges that Apple induces its customers to infringe the patents at issue "by instructing such customers regarding the registration for, and use of," the infringing functions of the accused products. ECF Docket No. 1, ¶¶ 28 ('208 Patent), 34 ('705 Patent), and 40 ('039 Patent). Apple's

criticism is that "CPC does not allege any facts or cite to any evidence to support these allegations." Apple Motion at 16. As to the need for evidence, the Fifth Circuit has ruled that it was error for a district court to require the evidentiary substantiation of a claim at the pleading stage. *Wright v. Union Pacific Railroad Co.*, 990 F.3d 428, 433 (5th Cir. 2021). Despite having had no need to do so, CPC ***did*** cite and provide evidence (which Apple ignored) supporting its claims of indirect infringement in the form of pre-litigation correspondence that provided Apple "with specific notice of infringement," and that "indicated Apple's awareness of" the patents in suit. *See* ECF Docket No. 1, ¶¶ 22 & 23, and Exs. D & E.

Otherwise, Apple complains that "CPC makes no effort to identify which customers it believes Apple induces to infringe. Apple Motion at 16. However, "[t]o state a claim for indirect infringement . . . a plaintiff need not identify a ***specific*** direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1336 (Fed. Cir. 2012) (citations omitted) (emphasis added). As noted above, CPC's allegations include that Apple induces the use of the infringing features, which, as the pleadings indicate, are used to unlock Apple devices. *See, e.g.,* ECF Docket No. 1-6 at 9. Obviously, purchasers of Apple products do want to use them and do in fact use them, thus CPC's allegations raise an inference of direct infringement by Apple customers.

Apple's protestations regarding the alleged deficiencies in CPC's indirect infringement claims ring hollow. The motion regarding those claims should also be denied.

## V.    The Complaint Contains Adequate Allegations Regarding Past Damages

The last category of alleged pleading deficiencies is past damages. Despite acknowledging that "CPC has complied with 35 U.S.C. § 287" (Apple Motion at 17), Apple takes the curious

position that "CPC does not plead any facts related to compliance with" that statute (*id.* at 18). Apple again complains that "CPC puts forward no evidence or facts" to support its allegations. As noted above, evidence is not required at the pleading stage. *See Wright,* 990 F.3d at 433.

As to concerns the sufficiency of CPC's allegations, none of Apple's cases help Apple. In *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017), the court merely addressed burden assignment, and did not discuss pleading sufficiency. In *Express Mobile, Inc. v. DreamHost LLC*, No. 1:18-cv-001173, 2019 WL 2514418 at *2 (D. Del. June 19, 2019), the plaintiff did not mention section 287 at all. Finally, *PACT XPP Tech., AG v. Xilinx, Inc.*, No. 2:07-cv-00563, 2012 WL 1029064 *2 (E.D. Tex. March 26, 2012) involved a denial of summary judgment on a claim for past damages, and did not address the sufficiency of allegations regarding compliance with section 287.[2]

Apple decries CPC's purported failure to allege "that it properly marked its own products in adherence with the strict requirements of the § 287 patent marking statute." Apple Motion at 17. Apple is silent as to what those products actually are. And, as the complaint notes, "CPC is an investment company" that "CPC acquired a patent portfolio, including the '039 Patent, '208 Patent, and '705 Patent," which entirely belies the notion that Charter has any products of its own. ECF Docket No. 1, ¶ 4. This is significant because the marking requirement of section 287 applies to "[p]atentees, and persons making, offering for sale, or selling within the United States any

---

[2] While, as Apple notes, the court in *PACT XPP* stated *in dicta* that a plaintiff has an obligation to plead compliance with section 287, it made no pronouncement regarding the detail required for such pleading. In fact, ironically, the amended complaint in that case contained ***no*** allegations regarding compliance with section 287. *See PACT XPP Tech., AG v. Xilinx, Inc.*, No. 2:07-cv-00563, Amended Complaint for Patent Infringement (E.D. Tex. Feb. 16, 2019) [ECF Docket No. 57].

patented article for or under them, or importing any patented article into the United States."  35 U.S.C. § 287.

Independent of the sufficiency of the marking allegations in the complaint, Apple's motion with respect to dismissing claims of past damages should be denied in light of the actual notice of infringement that Apple received in March 2020.  *See* ECF Docket No. 1-4.  Section 287 provides, in relevant part, that, even in the event of a failure to comply with the marking requirement:

> [N]o damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.

35 U.S.C. § 287.

The afore-referenced correspondence to Apple in March 2020 provided actual notice that Apple infringed at least the '705 and '039 Patents.  *See* ECF Docket No. 1-4.  Apple does not address this correspondence, which is by itself fatal to Apple's motion to dismiss CPC's claim for past damages.  The motion, as it pertains to such claim of past damages, should be denied as well.

## VI.    Apple's Litigation Behavior

Apart from having filed virtually simultaneous motions to transfer venue and to dismiss, in a letter from its counsel, Apple purported to provide "notice to CPC that Apple reserves all rights should CPC fail to [withdraw its complaint], including to seek fees and costs pursuant to Rule 11." Letter from Seth M. Sproul to George Summerfield (May 6, 2021) [Ex. A].  It is clear that this letter was not intended to satisfy Apple's pre-filing obligations under Rule 11, as this type of "notice" is insufficient to satisfy such obligations. *See In re Pratt*, 524 F.3d 580, 588 (5th Cir.

2008). ("We are not persuaded that informal service is sufficient to satisfy the service requirement of" Fed. R. Civ. P. 11[3]).

Rule 11 should not, by itself, be used "to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation, to create a conflict of interest between attorney and client, or to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine." *Intellectual Ventures II LLC v. FedEx Corp.*, 2:16-CV-00980, 2019 WL 5784171 (E.D. Tex. March 28, 2019) at *6-7, *quoting Adhikari v. Daoud & Partners*, 2017 U.S. Dist. LEXIS 196702, at *9–10 (S.D. Tex. Nov. 30, 2017).  Along those lines, the Patent FAQs from this Court's website make clear that facts underlying a Rule 11 motion must be "so strong that virtually any Court in the country would grant the motion," and a denial of such motion is accompanied by skepticism that the motion "was filed in good faith to begin with."  J. Albright Patent FAQ, July 2020: Rule 11 and Sanctions Motions https://www.txwd.uscourts.gov/for-attorneys/judge-albright-courtroom-faq/ (last visited May 18, 2021).

When a party uses the threat of that Rule in conjunction with early motions of the type filed by Apple, such behavior reveals the true intention of such party—litigation by intimidation.  Such behavior should not be countenanced.

---

[3] Although *Pratt* addressed the requirements of Fed. Bkrtcy R. 9011, the court noted that such rule is "substantially identical" to Rule 11.  *Pratt*, 524 F.3d at 586.

**VII.    Conclusion**

For the foregoing reasons, the instant motion should be denied.  In the alternative, CPC should be allowed to amend its claims to provide additional detail, should it be required, regarding the accused devices, Apple's acts of inducement, and CPC's claim for past damages.[4]

---

[4] Apple urges that dismissal should be with prejudice, given the purported futility of any amendment CPC might make.  *See, e,g,,* Apple Motion at 10.  Apple provides no explanation for this alleged futility, and, in fact, it acknowledges that only "***to the extent*** that the plaintiff cannot allege facts to remedy their complaint" would amendment be futile.  *See id.* (emphasis added).

Date: May 19, 2021

Respectfully submitted,

 /s/ *Stewart Mesher*
Stewart Mesher
Texas State Bar No. 24032738
**K&L GATES LLP**
2801 Via Fortuna, Suite #350
Austin, TX 78746
Tel.: (512) 482-6841
Fax: (512) 482-6859
Stewart.Mesher@klgates.com

Elizabeth A. Gilman
Texas State Bar No. 24069265
**K&L GATES LLP**
1000 Main Street, Suite #2550
Houston, Texas 77002
Tel.: (713) 815-7327
Fax: (713) 815-7301
Beth.Gilman@klgates.com

James A. Shimota
(admitted *pro hac vice*)
Illinois State Bar No. 6270603
George C. Summerfield
(admitted *pro hac vice*)
Michigan State Bar No. P40644
Dhohyung Kim
(admited *pro hac vice*)
Illinois State Bar No. 6336174
**K&L GATES LLP**
70 W. Madison Street, Suite #3300
Chicago, IL 60602
Tel.: (312) 807-4299
Fax: (312) 827-8000
Jim.Shimota@klgates.com
George.Summerfield@klgates.com
DK.Kim@klgates.com

**ATTORNEYS FOR CPC PATENT TECHNOLOGIES PTY LTD**

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that on this 19th day of May 2021, I filed the foregoing PLAINTIFF CPC PATENT TECHNOLOGIES PTY LTD.'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) electronically through the CM/ECF system, which caused service by electronic means on all counsel of record.

/s/ *Stewart Mesher*
Stewart Mesher