IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| CPC PATENT TECHNOLOGIES PTY LTD., <br> *Plaintiff,* <br><br> v. <br><br> APPLE INC., <br> *Defendant.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil No. 6:21-cv-00165-ADA |

**PUBLIC VERSION OF**
**SEALED MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Apple Inc.'s ("Apple" or "Defendant") Motion to Transfer Venue from the Western District of Texas ("WDTX") to the Northern District of California ("NDCA") under 28 U.S.C. § 1404(a). Dkt. No. 22. After careful consideration of the relevant facts, applicable law, and the parties' briefs (Dkt. Nos. 22, 30, 32, 42, 44-1), the Court **DENIES** Defendant's Motion to Transfer.

## I.   BACKGROUND

Plaintiff CPC Patent Technologies Pty Ltd. ("CPC" or "Plaintiff") filed this lawsuit accusing Defendant of patent infringement. Dkt. No. 1. CPC alleges infringement of U.S. Patent Nos. 9,269,208 and 9,665,705 (collectively, "Asserted Patents") by "iPhones and iPads equipped with Touch or FaceID," "products equipped with Apple Card loaded into the iPhone Wallet," and "any Apple product or device that is substantially or reasonably similar" such as the Mac Pro.[1] *Id.* ¶ 2; Dkt. No. 22 at 2; Dkt. No. 30 at 8.

CPC is an Australian corporation with its principal place of business in Australia. Dkt. No. 1 ¶ 3.

---

[1] Originally misidentified as the MacBook Pro. Dkt. No. 32 at 2 n.3. The Court otherwise **strikes all footnotes** in Apple's reply, apparently deployed to circumvent the 5-page limit. OGP at 6.

Apple is a California corporation with a principal place of business in Cupertino, California and regular and established places of business at 12535 Riata Vista Circle, Austin, Texas and 5501 West Parmer Lane, Austin, Texas. *Id.* ¶ 5.  Apple has about 35,000 employees near its Cupertino campus. Dkt. No. 22-2 ¶ 3. Apple employs thousands of people in Austin and is building a 15,000-employee campus in Austin. Dkt. No. 1 ¶¶ 6-7. Apple operates and sells accused products in Austin at the retail establishments at Barton Creek Square and at Apple Domain Northside. *Id.* ¶ 8.

The following relevant groups and individuals of Apple are located in NDCA: Mr. Boshra, who has knowledge of the accused Touch ID technology from working at AuthenTec, which Apple acquired; Apple's designers, developers, and engineers including Mr. Yepez and Mr. Diedrich; marketers and product managers Mr. Silva and Mr. Nagre; and finance and licensing managers Mr. Ankenbrandt and Mr. Rollins. Dkt. No. 22 at 3-4.  Altogether, Apple specifically identifies seven individuals in NDCA. Dkt. No. 32 at 1.

The following relevant groups and individuals of Apple are outside of NDCA: Mr. Setlak, who co-founded AuthenTec and resides in Florida; designers, developers, and engineers in the Czech Republic (including Mr. Sykora); and designers, developers, and engineers in Florida. Dkt. No. 22 at 3. Altogether, Apple specifically identifies two individuals outside of NDCA. Dkt. No. 32 at 1. In summary, Apple's anticipated witnesses are in NDCA, the Czech Republic, and Florida. *Id.* at 5.

Plaintiff identifies Apple employees Mr. Noumbissi and Mr. Jerubandi as relevant witnesses in Austin who can easily travel to Waco.  Mr. Noumbissi is "the financial service provider for Apple Card," a feature accused of infringement.  Dkt. No. 32 at 3. He has a business background, works in operations management, and uses surveys to improve customer satisfaction with Apple Card. Dkt. No. 30-1 at 21:9-25; Dkt. No. 32 at 3. Apple disputes Mr. Noumbissi's

2

relevance, but his knowledge about surveys of customer satisfaction with the accused feature goes to the value of the patent and affects damages. Mr. Jerubandi is "a software engineer who works on integrating Touch ID for use with 'Apple internal applications used by Apple employees.'" Dkt. No. 32 at 3. Plaintiff accuses Touch ID technology of infringement. Apple argues that its internal Touch ID is "entirely different" from what is accused, which Apple understands to be an external version of Touch ID. Mr. Jerubandi's testimony does not support this attorney argument. Dkt. No. 32 at 3. Instead, when asked about his knowledge of the external version of Touch ID, Mr. Jerubandi testified that he and his team "don't even know how it works," so Mr. Jerubandi has no basis to know if the internal Touch ID was entirely different from the external version. Dkt. No. 30-3 at 14:9-15.

The following third parties have relevant information: a manufacturer of the Mac Pro in Austin (Dkt. No. 30 at 8); the inventor, Mr. Burke, who resides either in Australia or Hong Kong (Dkt. No. 22 at 6); and Mr. Burke's Australian company Securicom in Australia (*id.*).

## II. LEGAL STANDRD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action might have been brought in the transfer destination venue. *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Volkswagen I*, 371 F.3d at 203. Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on the conduct of a defendant after suit has been instituted. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls on the moving party. *Volkswagen II*, 545 F.3d at 314. The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 315. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id*. at 314-315. While "clearly more convenient" is not necessarily

equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

## III. ANALYSIS

### A. Threshold Inquiry Satisfied

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue. Apple asserts that this case could have originally been brought in NDCA because Apple has its headquarters there. Dkt. No. 22 at 6. Plaintiff does not contest this point. This Court finds that venue would have been proper in NDCA. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if NDCA is clearly more convenient than WDTX.

### B. The Private Interest Factors Weigh Against Transfer

#### 1. *The relative ease of access to sources of proof is neutral*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

Although the physical location of electronic documents affects the outcome of this factor under current Fifth Circuit precedent, the Federal Circuit found that "electronic storage makes documents more widely accessible." *In re Atlassian Corp. PLC*, No. 2021-177, 2021 WL 5292268,

at *2 (Fed. Cir. Nov. 15, 2021) (citing *Volkswagen II*, 545 F.3d at 316). "[A]ll (or nearly all) produced documents exist as electronic documents on a party's server. Then, with a click of a mouse or a few keystrokes, the party produces these documents" and makes them available at almost any location." *Uniloc 2017 LLC v. Apple Inc.,* 6-19-CV-00532-ADA, 2020 WL 3415880, at *9 (W.D. Tex. June 22, 2020). Other courts in the Fifth Circuit similarly found that access to documents that are available electronically provides little benefit in determining whether one particular venue is more convenient than another. *See, e.g., Uniloc USA Inc. v. Samsung Elecs. Am., Inc.*, No. 2:16-CV-638-JRG, 2017 WL 11631407, at *4 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality in favor of a fictional analysis that has more to do with early Xerox machines than modern server forms."). This Court gives the physical location of electronic documents only minimal relevance.

In April 2021, Defendant understood that "virtually all" discovery from Plaintiff will come from NDCA. Dkt. No. 22 at 9. This understanding changed in May 2021 when Mr. Rollins declared, "I understand that working files, electronic documents, and any hard copy documents concerning the Accused features reside on local computers and/or servers either located in or around the NDCA, Prague, or Melbourne[2] or are accessible in the NDCA, Prague, or Melbourne [facilities]." Dkt. No. 22-2 ¶ 8.

---

[2] Melbourne, Florida.

                *i)*      *No relevant physical evidence exists to influence this factor*

The Court finds that no relevant physical evidence exists. Mr. Rollins would not plainly declare as fact that relevant physical documents exist. The Court understands Mr. Rollins's quote above to declare his understanding of where "any hard copy documents" should be if they did exist. *Id.* Mr. Rollins does not provide the basis of his understanding, explain the process he used to search for physical documents, or identify a relevant business practice of keeping physical documents for the accused products. Mr. Rollins does not identify any specific physical documents unavailable in electronic form. Indeed, Mr. Rollins stated that he does "not have personal or direct knowledge" and "here do not provide verification" of venue interrogatories. Dkt. No. 30-5.

Instead, the testimony by Mr. Rollins repeatedly establishes that Apple's teams work internationally using electronic documents. Apple's teams routinely use electronic documents to collaborate from NDCA to Florida and to the Czech Republic. Because neither party convinces the Court that physical documents or other physical evidence exists, the convenience of physical evidence is neutral.

                *ii)*      *The convenience of accessing electronic documents is either neutral or not meaningful*

The Court evaluates the "relative ease of access to sources of proof" with regard to electronic documents. *Volkswagen I*, 371 F.3d at 203. Mr. Rollins testified that these documents "reside on local computers and/or servers either located in or around the NDCA, Prague, or Melbourne or are accessible in the NDCA, Prague, or Melbourne." Dkt. No. 22-2 ¶ 8. He gained this knowledge by speaking to Apple's teams who testified that they work with team members across NDCA, Florida, and the Czech Republic. *Id.* ¶¶ 9-13. However, this testimony does not

support Apple's argument that the *bulk* of electronic evidence is in NDCA. Instead, the testimony merely establishes that the electronic documents are somehow spread out between NDCA, Florida, and the Czech Republic. Plaintiff can just as easily access its own electronic documents from any of its offices because its employees collaborate from NDCA to Florida and across the world to the Czech Republic. Plaintiff will have similarly convenient access to its own electronic documents at its 15,000-employee campus in Austin. Even if Plaintiff restricts access to its source code to its own campuses, Plaintiff's Austin campus will make access to Plaintiff's source code in WDTX and NDCA equally convenient.

The Court further considers the manufacturer of the Mac Pro in Austin. This third party is likely to have electronic documents, such as technical documents needed to assemble the accused product. When considering Apple's electronic documents conveniently accessible from any of its offices in NDCA, Florida, the Czech Republic, and Austin in combination with the manufacturer's electronic documents in Austin, the Court finds this factor neutral.

Apple raises a disputes of law. The Court agrees with Apple that "accessibility alone is not the test." *Masterobjects, Inc. v. Facebook, Inc.*, No. 6:20-cv-00087-ADA, Dkt. 86 at 6 (W.D. Tex. Jul. 13, 2021). But the Court disagrees with Apple that Apple's access from Austin is "irrelevant to this factor." Dkt. No. 32 at 4. This factor evaluates the *relative* ease of access to sources of proof. *Volkswagen I*, 371 F.3d at 203. In other words, this Court considers the ease of access to evidence from NDCA, the ease of access to evidence from WDTX, and then compares their relative ease of access. Although Federal Circuit granted mandamus in the case *In re Apple*, 979 F.3d 1332, the Federal Circuit did not find the availability of documents in Texas irrelevant to this factor. Instead, the Federal Circuit corrected a "failure to even mention Apple's sources of proof in NDCA" when considering this factor. *In re Apple*, 979 F.3d at 1340. This opinion explicitly

considers and weighs the convenience of access to the evidence in NDCA against the convenience of accessing evidence in Florida, Czech Republic, and Austin and finds them neutral.

Apple's Reply then argues that the "location of electronic documents is not a meaningful metric." Dkt. No. 32 at 4. The Court disagrees but does not address this argument because it found this factor neutral, which has the same effect.

### 2. *The availability of compulsory process to secure the attendance of witnesses weighs against transfer*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, No. 6:18-cv-00372, 2019 WL 4743678 at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

Plaintiff does not argue this factor except that neither the Court in NDCA nor the Court in WDTX can compel inventor Christopher Burke or his company to attend trial. The Court finds this factor neutral as to Mr. Burke and his company.

Defendant argues the Court in NDCA cannot compel the Mac Pro manufacturer in Austin to attend trial.  This Court agrees.  Apple does not dispute the assembly of the Mac Pro in Austin. Instead, Apple argues that the Mac Pro is not accused and not relevant. The Court finds the product

properly accused and its assembly relevant to infringement. Moreover, the third-party manufacturer is likely to testify about technical information or assembly information that is relevant to infringement and production information that may affect damages. This factor strongly weighs against transfer.

### 3. *The cost of attendance and convenience for willing witnesses only slightly favors transfer*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. When analyzing this factor, the Court should consider all potential materials and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 U.S. Dist. LEXIS 152438, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

This factor appropriately considers the cost of attendance of all willing witnesses including both party and non-party witnesses. *In re Pandora*, No. 2021-172, 2021 WL 4772805, at *2-3 (Fed. Cir. Oct. 13, 2021). "Courts properly give more weight to the convenience of non-party witnesses than to party witnesses." *Netlist, Inc. v. SK Hynix Inc.*, No. 6:20-CV-00194-ADA, 2021 WL 2954095, at *6 (W.D. Tex. Feb. 2, 2021).

"When the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). The Federal Circuit has stated that courts should not apply this 100-mile rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317).

"[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, slip op. at 9 (Fed. Cir. Sept. 27, 2021). The Federal Circuit has indicated that time away from an individual's home is a more important metric than distance. *Id.* Time and distance frequently and naturally overlap because witnesses usually take more time to travel farther away, thereby increasing the time away from home.

Apple argues, based on an unpublished case, that for this factor, "the relative proximity of one venue over another does not matter." Dkt. No. 22 at 11 (citing *In re TracFone Wireless, Inc.*, 852 F. App'x 537, 539 (Fed. Cir. 2021)). The Court disagrees because Apple wants to ignore the 100-mile rule entirely. Instead, the Federal Circuit ignores the 100-mile rule only when it produces results divorced from the underlying rationale. *TracFone*, 852 F. App'x at 539.

> In applying the 100-mile rule, this court has rejected a rigid approach that would produce results divorced from that underlying rationale. For example, in *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009), we held that "the '100-mile' rule should not be rigidly applied" where "witnesses . . . will be required to travel a significant distance no matter where they testify." We concluded that witnesses traveling from Europe, Iowa, and the East Coast would only be "slightly more inconvenienced by having to travel to California" than to Texas. *Id.* at 1348.

*In re TracFone*, 852 F. App'x at 539. Like the *Genentech* witnesses in Europe, Apple's Czech Republic witness will find it slightly more inconvenient to travel to California instead of Texas.

Seven identified Apple witness in NDCA will find it inconvenient to travel to WDTX. When applying the 5th Circuit's 100-mile rule, Apple's Florida witnesses will find it about twice as inconvenient to travel to NDCA than to WDTX because Texas sits halfway from Florida to

11

California. These Florida witnesses will spend a greater time away from home because it takes twice as long to get to California than to Texas. The Court does not find this inconvenience divorced from the underlying rationale and follows the Federal Circuit's *Genentech* precedent. *Genentech, Inc.*, 566 F.3d at 1344. If the *Genentech* witness in Iowa found California less convenient than Texas, then the Florida witnesses in this case will find California even less convenient because the Florida witnesses will need to travel all the way from southeast tip of the United States to the northwest. *Genentech, Inc.*, 566 F.3d at 1348.

Additionally, Plaintiff identified two Apple employees, Mr. Noumbissi and Mr. Jerubandi, in Austin with knowledge about the accused Touch ID technology. Both of these employees have knowledge relevant to the case. Mr. Noumbissi has business knowledge about surveys that go to the value of accused features. Mr. Jerubandi had technical knowledge of an "internal" version of Touch ID. These Austin employees will find travel to NDCA inconvenient.

The Court considers the convenience of the seven Apple employees in NDCA mostly, but not completely, counterbalanced by the convenience of the two Apple employees in Austin and the two Apple employees in Florida and the Czech Republic. After weighing their relative conveniences, this factor favors transfer due to the inconvenience that transfer will cause to other witnesses.

### 4. *All other practical problems that make trial of a case easy, expeditious, and inexpensive weighs against transfer*

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb*

*Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3.

Motions to transfer venue are to be decided based on "the situation which existed when suit was instituted." *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (citations and quotations omitted). "While considerations of judicial economy arising *after* the filing of a suit do not weigh against transfer, a district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed." *Id.* at 976. A district court's "experience with a patent in prior litigation and the co-pendency of cases involving the same patent are permissible considerations in ruling on a motion to transfer venue." *Id.* "[C]ourts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). "Judicial economy is served by having the same district court try . . . cases involving the same patents." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).

CPC sued HMD Global Oy ("HMD") in this Court for infringing the same patents asserted against Apple. *CPC Pat. Techs. Pty Ltd. v. HMD Glob. Oy*, No. 6:21-CV-00166-ADA (W.D. Tex.). HMD and Apple are asserting a similar universe of prior art. Dkt. No. 44-1. Keeping these cases together promotes judicial efficiency and allows this Court to coordinate similar issues in Markman, invalidity, infringement, and trial.

Apple argues that the Federal Circuit ruled that "actions against different defendants are unlikely to result in inconsistent judgments" and "negated any concerns regarding coordination of

13

claim construction and invalidity issues." Dkt. No. 32 at 4 (citing *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021)). *In re Samsung* involved co-pending cases that would have "significantly different discovery, evidence, proceedings, and trial." *In re Samsung*, 2 F.4th at 1379. This Court finds the facts here distinguished because Plaintiff asserted the same underlying patents against both Apple and HMD such that similar discovery, evidence, proceedings, and trial will result. Additionally, this Court finds that coordinating claim construction and invalidity between the co-pending cases will promote efficiency. This is "based on the rational argument that judicial economy is served by having the same district court try the cases involving the same patents." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (denying mandamus for this reason). Finally, if inconsistent judgments will not likely result, then this risk will not sway the Court.

Apple also argues that the Court should disregard HMD's case due to HMD's small size compared to Apple. The proper inquiry is whether this will make trial of a case easy, expeditious, and inexpensive. Disregarding HMD's case will not make Apple's trial of a case easy, expeditious, and inexpensive.

This Court finds that this factor weighs against transfer because keeping the co-pending litigation that the same patents in this Court will promote judicial efficiency.

    **C.**    **The Public Interest Factors Weigh Against Transfer**

    *1.*    *Administrative difficulties flowing from Court congestion weighs against transfer*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). This factor considers the "[t]he speed with which a case can come to trial and be

resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. Additionally, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

Defendant argues that the judges in NDCA have fewer patent cases than this Court and speculates that this Court will not quickly try its patent cases. The correct inquiry should instead focus on the speed to trial, not the number of pending patent cases per judge. Despite the lower patent caseload, the Courts in NDCA suspended their trials for COVID-19 and will not resume jury trials until June 2022 or later. Dkt. No. 22 at 14.

In contrast, this Court conducted in person jury trials in a safe and efficient manner during the COVID-19 pandemic. Defendant agrees that this Court has "been able to proceed more quickly to trial recently." Dkt. No. 22 at 14. This Court began a trial for *NCS Multistage Inc. v. Nine Energy Servs., Inc.* on January 18, 2022, less than two years after its filing. No. 6:20-cv-00277-ADA (W.D. Tex. filed April, 2020). Last week, the Court began the trial for *EcoFactor, Inc. v. Google LLC*, exactly two years after its filing. No. 6:20-cv-00075-ADA (W.D. Tex. filed Jan. 31, 2020). This Court has demonstrated its ability to quickly reach trial beyond speculation, even with a large case load. In contrast, patent cases in NDCA expect to go to trial nearly three and a half years after the filing of the complaint. *See, e.g., Finjan LLC v. Cisco Sys. Inc.*, No. 17-cv-72-BLF (N.D. Cal.), Dkt. Nos. 1 (January 6, 2017 complaint) and 738 (ordering trial on June 3, 2021). Transferring this case to California would cause great delay due to the administrative difficulties there.

When comparing the times to trial, this Court finds that the administrative difficulties in NDCA weigh against transfer when compared to the administrative difficulties in WDTX.

### 2. *Local interest in having localized interests decided at home is neutral*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung Elecs. Co.*, Nos. 2021-139, 2021-140, 2021 U.S. App. LEXIS 19522, at *20 (Fed. Cir. June 30, 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *See In re Juniper Networks, Inc.*, 14 F.4th at 1320.

Apple argues this factor in its favor because its headquarters and several witnesses are in NDCA, and because research, design, and development occurred there. These facts weight in favor of transfer. Plaintiff argues this factor in its favor because the advertising and sale of the accused products occurs in WDTX, as well as the manufacturer of the Mac Pro by a third party in Austin.

16

The third-party Mac Pro manufacturer in Austin will want to know if it is making a patented product, for example, to seek indemnity or other assurances from Apple. Moreover, Plaintiff's thousands of employees in Austin establishes its interest here as well. These facts weigh against transfer. Thus, events in both NDCA and WDTX give rise to this lawsuit. This Court finds these competing local interests to cancel out. This factor is neutral.

### 3.   *Familiarity of the forum with the law that will govern the case is neutral*

The parties agree this factor is neutral.

### 4.   *Avoidance of unnecessary problems of conflict of laws or in the application of foreign law is neutral*

The parties agree this factor is neutral.

## IV.   CONCLUSION

Plaintiff has failed to meet the burden of proving that NDCA is "clearly more convenient" than WDTX. The convenience of Apple's seven NDCA witnesses weighs in favor of transfer, and although it is an important factor, this factor is mostly counterbalanced by other Apple witnesses in Austin, Florida, and the Czech Republic would find NDCA less convenient. The inability to compel the third-party Mac Pro manufacturer to trial in NDCA, the administrative difficulties in NDCA, and the lost efficiency from the co-pending related litigation in WDTX all weigh against transfer. This case shall proceed in WDTX, where Apple employs thousands of people, where Apple is building a 15,000 employee campus, where a third-party manufactures the accused product, where two of Apple's witnesses reside, where other witnesses find it more convenient to travel to, where the parties can reach trial sooner, and where a related case is pending.

Defendant's Motion to Transfer Venue to NDCA is **DENIED.** The parties are reminded to comply with their obligation to redact sealed opinions.

SIGNED this 8th day of February, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

18