NOTE:  This order is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————————

**In re:  APPLE INC.,**
*Petitioner*

———————————————

2022-128

———————————————

On Petition for Writ of Mandamus to the United States District Court for the Western District of Texas in No. 6:21-cv-00165-ADA, Judge Alan D. Albright.

———————————————

**ON PETITION**

———————————————

Before DYK, REYNA, and CHEN, *Circuit Judges*.

DYK, *Circuit Judge*.

## O R D E R

Apple Inc. petitions for a writ of mandamus directing the United States District Court for the Western District of Texas to transfer this case to the United States District Court for the Northern District of California.  CPC Patent Technologies PTY Ltd. opposes.  Because the district court clearly abused its discretion in evaluating the transfer motion, we grant the petition and direct transfer.

BACKGROUND

CPC filed this suit in the Waco Division of the Western District of Texas, alleging that Apple's mobile phones, tablets, and computing products equipped with Touch ID, Face ID, or Apple Card features infringe three of CPC's patents relating to biometric security. It is undisputed that CPC, an Australian-based investment company, does not have any meaningful connection to the Western District of Texas and that the inventor of the asserted patents also resides outside of the United States.

Apple moved to transfer under 28 U.S.C. § 1404(a) to the Northern District of California. Apple noted that its employees responsible for the design, development, and engineering of the accused functionality reside in the Northern District of California, where Apple maintains its headquarters, or outside of Western Texas, in the Czech Republic and Florida; its employees most knowledgeable about the marketing, licensing, and financial issues relating to the accused products were also located in the Northern District of California; and, to its knowledge, no Apple employee involved in the development of the accused functionality worked from Western Texas.

On February 8, 2022, the district court denied Apple's motion. After finding that the threshold requirement for transfer under § 1404(a) that the action "might have been brought" in the Northern District of California was satisfied, the district court analyzed the private and public interest factors that traditionally govern transfer determinations. The district court determined that the factor concerning the convenience of willing witnesses slightly favored transfer. Conversely, the district court determined that the factor accounting for the availability of compulsory process weighed strongly against transfer and that the court congestion and practical problems factors also weighed against transfer based on its ability to quickly reach trial, Appx15, and CPC having another pending suit

alleging infringement in the Western District of Texas against a different defendant. The remaining transfer factors, the court found, favored neither forum.

Notably, the district court recognized that Apple had identified seven witnesses in the Northern District of California, but the district court found that inconvenience was mostly counterbalanced by the presence of two Apple employees in Austin that CPC had insisted as having relevant information and an Apple party witness in Florida the court said would "find it about twice as inconvenient to travel to NDCA than to WDTX because Texas sits halfway from Florida to California." Appx11–12. In addition, the court relied on its ability to compel the third party "Mac Pro manufacturer in Austin to attend trial," finding that product is "properly accused and its assembly relevant to infringement" and that the product's manufacturer "is likely to testify about technical information or assembly information that is relevant to infringement and production information that may affect damages." Appx9–10. It also relied on that manufacturer as a basis for weighing the local interest and sources of proof factors as neutral. Appx17 ("The third-party Mac Pro manufacturer in Austin will want to know if it is making a patented product . . . ."); Appx8 (noting the Mac Pro manufacturer "is likely to have electronic documents, such as technical documents needed to assemble the accused product").

On balance, the court determined that Apple had "failed to meet the burden of proving that NDCA is 'clearly more convenient' than WDTX," and thus, this case should "proceed in WDTX, where Apple employs thousands of people, where Apple is building a 15,000 employee campus, where a third-party manufactures the accused product, where two of Apple's witnesses reside, where other witnesses find it more convenient to travel to, where the parties can reach trial sooner, and where a related case is pending." Appx17. For those reasons, the court denied Apple's transfer motion. This petition followed.

DISCUSSION

Our review is governed by the law of the regional circuit, which in this case is the United States Court of Appeals for the Fifth Circuit. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Fifth Circuit law provides that a motion to transfer venue pursuant to section 1404(a) "should be granted if 'the movant demonstrates that the transferee venue is clearly more convenient.'" *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc)). The Fifth Circuit generally reviews a district court's decision to deny transfer for an abuse of discretion. *See Volkswagen*, 545 F.3d at 310. A district court abuses its discretion "if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). "Errors of judgment in weighing relevant factors are also a ground for finding an abuse of discretion." *In re Nitro Fluids L.L.C.*, 978 F.3d 1308, 1310 (Fed. Cir. 2020) (citing *TS Tech*, 551 F.3d at 1320). "We may grant mandamus when the denial of transfer was a clear abuse of discretion under governing legal standards." *Nitro*, 978 F.3d at 1311 (citations omitted). Applying those standards, we agree that Apple has shown clear entitlement to transfer to the Northern District of California here.

The district court noted that "[t]he most important factor in the transfer analysis is the convenience of the witnesses." Appx10 (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1336, 1342 (Fed. Cir. 2009)). And the court acknowledged that Apple identified a significant number of witnesses residing in Northern California, including an Apple employee who worked at the company that created the Touch ID technology acquired by Apple, Appx127; two employees who work on the research, design, and development of the accused features, Appx127–28; two employees who work on the marketing and promotion of the accused features, Appx129–30; an employee knowledgeable about

Apple's licensing of intellectual property, Appx130; and an employee knowledgeable about sales and financial information concerning the accused products, *id*.

The court, however, found that this factor tilted only slightly in favor of transfer. We agree with Apple that this conclusion was erroneous. The court relied on two Apple employees in Austin that CPC indicated it may wish to call as potential witnesses. But it is far from clear that either of those employees has relevant or material information. One of the employees identified as being knowledgeable about Touch ID said during his deposition that the internal Apple authentication application he worked on was entirely different from the functionality that appears to be the focus of the infringement allegations. Appx329–30. The other employee was found to be a potential witness only on the basis that he had "knowledge about surveys of customer satisfaction with" Apple Card. Appx3. And even without second guessing the district court's conclusion in these respects, this factor still strongly favors transfer where the transferee venue would be more convenient for the witnesses overall.

The court also pointed to an Apple witness in Florida who the court concluded would find it "about twice as inconvenient" to attend trial in the Northern District of California than in the Western District of Texas. Appx11. The sole basis for the district court's conclusion was that "Texas sits halfway from Florida to California." Appx11–12. But we have repeatedly rejected the view that "the convenience to the witnesses should be weighed purely on the basis of the distance the witnesses would be required to travel, even though they would have to be away from home for an extended period whether or not the case was transferred." *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *6 (Fed. Cir. Oct. 13, 2021) (collecting cases); *In re Apple Inc.*, 979 F.3d 1332, 1341–42 (Fed. Cir. 2020). Here too, while trial in Northern California will require the Apple employee in Florida to spend significant time away

IN RE: APPLE INC.

from home, trial in Western Texas will undoubtedly impose a similar burden on the Apple employee.  The willing witness factor accordingly weighs firmly in favor of transfer.

The district court also clearly erred in its determination that the compulsory process factor strongly weighed against transfer based on its ability to compel the testimony of a third-party manufacturer of an accused product.  Critical to the district court's conclusion was its finding that the "Mac Pro" was "properly accused and its assembly relevant to infringement."  Appx9–10.  That finding, however, is entirely unsupported by the record.  It is undisputed that CPC has not accused the Mac Pro of infringement in this litigation.  Indeed, Apple states without challenge from CPC that the Mac Pro is not even compatible with Touch ID, Face ID, or Apple Card.

The court's confusion appears to have been caused by CPC incorrectly alleging, in its opposition to Apple's transfer motion, that Apple issued a press release indicating that the MacBook Pro would be manufactured in Austin.[*]  However, the press release attached to CPC's filing clearly stated that the Mac Pro, not the accused MacBook Pro, would be produced in Austin.  Apple states without dispute that the accused MacBook Pro is not manufactured in Austin.  Because no other party was identified as relevant under the compulsory process factor, this court agrees with

_____

[*]  CPC argues that the confusion actually stems from statements made by one of Apple's employees during a deposition.  The employee accidentally stated "Mac Pro" when he meant to say "MacBook Pro" in one statement.  Apple points out, however, that this meaning was made clear one question later when he correctly described the MacBook Pro.  Reply at 5.  Apple also noted that the parties discussed the error in a later meet-and-confer.  *Id*.  Regardless of the source of confusion, it remains clear that the district court's conclusion is not supported by the record.

Apple that there is no basis here to conclude that the factor weighs against transfer.

The district court similarly erred in its analysis of the local interest factor. The district court correctly recognized that the Northern District of California had a local interest in resolving this dispute because research, design, and development of the accused functionality occurred in that district. Appx16; *see Apple*, 979 F.3d at 1345. Despite this finding, the court held that the local interest factor weighed in favor of neither of the two forums. But it failed to provide any plausible basis for that conclusion. The district court first connected this case to the Mac Pro manufacturer, *see* Appx17, but, as noted above, that manufacturer has no connection to this case.

The court's second and only other stated rationale for its decision was Apple's "thousands of employees in Austin," *id.*, and echoing CPC's argument, the fact that "advertising and sale of the accused products occurs in WDTX," Appx16. But those activities are immaterial to the local interest analysis in this case. We have held that a party's "general presence in a particular district" does not alone "give that district a special interest in the case." *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021); *see also In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021); *Apple*, 979 F.3d at 1345. Rather, "what is required is that there be 'significant connections between a particular venue and *the events that gave rise to a suit.*'" *Google*, 2021 WL 4592280, at *5 (citations omitted). Here, no such connection between the Western District of Texas and the events giving rise to this infringement suit is reflected by the record. We have also explained that "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Thus, the local interest factor favors transfer.

IN RE: APPLE INC.

The access to sources of proof factor should likewise have been weighed in favor of transfer, not neutral, as the district court found it.  Apple submitted a sworn declaration stating that "working files, electronic documents, and any hard copy documents concerning the Accused Features reside on local computers and/or servers either located in or around" the Northern District of California, the Czech Republic, and Florida, where Apple's employees who are knowledgeable about the design and development of those features work.  Appx125.  Apple also informed the court that relevant source code associated with the accused functionality was developed at these Apple offices and that "this source code is controlled on a need-to-know basis." Appx126.  Apple also informed the court that its documents concerning the marketing, licensing, and financial records related to the accused products would be in the Northern District of California.  *See* Appx129.  Apple added that it was unaware of any relevant source code or documents being created or stored from its offices in Western Texas.  *See* Appx125–26, Appx129.

Aside from erroneously relying on the presence of potential evidence from the Mac Pro manufacturer (irrelevant to this case as we addressed above), the district court faulted Apple for not clearly showing that the bulk of the documentary evidence was located or stored in the Northern District of California.  Appx7–8.  Even so, with nothing on the other side of the ledger in the Western District of Texas, the Northern District of California would still have a comparative advantage with regard to the ease of access to the sources of proof located within that district.  *See Juniper*, 14 F.4th at 1321 ("We have held that the fact that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer."); *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014) ("The comparison between the transferor and transferee forums is not altered by the presence of

other witnesses and documents in places outside both fo-
rums.").

The district court also supported its decision to weigh
the sources of proof factor as neutral based on its view that
Apple had the capability of accessing its own electronic doc-
uments from its Austin offices.  Appx8.  But we rejected
very similar reasoning in *In re Apple Inc.*, No. 2021-181,
2021 WL 5291804, at *2 (Fed. Cir. Nov. 15, 2021).  There,
despite Apple having identified source code to which access
was restricted to employees working at its Northern Dis-
trict of California headquarters and no potential evidence
in the Western District of Texas, the district court found
the factor neutral based on its view that Apple could give
employees in Austin the proper credentials to access the
information from Apple's offices in Austin.  In finding the
court erred, we explained that "[t]he district court should
have compared the ease of access in the Western District of
Texas *relative* to the ease of access in the Northern District
of California."  *Id.* (citing *Juniper*, 14 F.4th at 1321).  The
district court here similarly failed to ask the correct ques-
tion, and in doing so, improperly discounted the relative
convenience of the transferee venue with regard to sources
of proof.  The court therefore erred in not weighing this fac-
tor in favor of transfer.

When we turn to the remaining factors, we see no
sound basis for keeping this case in the Western District of
Texas.  We have "rejected as a general proposition that the
mere co-pendency of infringement suits in a particular dis-
trict automatically tips the balance in the non-movant's fa-
vor."  *In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL
4771756, at *5 (Fed. Cir. Oct. 13, 2021); *see In re Samsung
Elecs. Co., Ltd.*, 2 F.4th 1371, 1379–80 (Fed. Cir. 2021); *In
re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013).  Here,
the district court appears to have overstated the concern
about waste of judicial resources and risk of inconsistent
results in light of CPC's co-pending suit in the Western Dis-
trict of Texas.  That suit involves a different defendant with

IN RE: APPLE INC.

different hardware and different software and thus is likely to involve significantly different discovery and evidence. *See Samsung*, 2 F.4th at 1379–80. Thus, any "incremental gains in keeping [this] case[] in the Western District of Texas" are insufficient "to justify overriding the inconvenience to the parties and witnesses" if the case were transferred to the Northern District of California. *Id.* at 1380.

Finally, there is no sound basis for the district court here to premise its denial of transfer on the court congestion factor. We have held that when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *Genentech*, 566 F.3d at 1347. Under this relevant precedent, we conclude that the evidence cited by the district court to support its conclusion that the Western District of Texas could schedule a trial sooner than if trial was held in the Northern District of California is insufficient to warrant keeping this case in plaintiff's chosen forum, given the striking imbalance favoring transfer based on the convenience factors and lack of any cited reason for why a more rapid disposition of the case that might be available in the Western District of Texas would be important enough to be assigned significant weight in the analysis.

Accordingly,

IT IS ORDERED THAT:

The petition is granted. The district court's February 8, 2022 order is vacated, and the district court is directed to transfer this matter to the United States District Court for the Northern District of California.

FOR THE COURT

April 22, 2022                          /s/ Peter R. Marksteiner
      Date                              Peter R. Marksteiner
                                        Clerk of Court